

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-07-282-CR

RUBEN WENGER V A/K/A REUBEN V. WENGER                    APPELLANT

V.

THE STATE OF TEXAS                                                                 STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

## OPINION

------------

## I.    Introduction

Appellant Ruben Wenger appeals his conviction on three counts of promotion of child pornography and four counts of possession of child pornography as alleged in the same indictment. Appellant argues that the evidence is legally and factually insufficient to support his conviction on the promotion counts and that the trial court abused its discretion in overruling his

hearsay objection and in admitting extraneous offense evidence of possession of child pornography.

## II.    Factual and procedural background

Sergeant Ried, an agent with the Attorney General's Cyber Crimes unit, testified that on November 28, 2005, he used file-sharing software called Shareaza to access the Internet through a covert access point in his office in Austin. Shareaza is a peer-to-peer[1] file sharing software that allows a user to search for music, movies, and image files and download them from other Shareaza users' computers. A Shareaza user can type exactly what he or she is looking for via search terms, and a results list will appear with download links for the user to choose from. The software also allows a user to select another user's Internet protocol ("IP") address[2] and browse all files available from that user's collection. Downloads from Shareaza are automatically placed in a "Shared" folder created by the software on the user's computer. By default, Shareaza automatically shares the items downloaded with other Shareaza users.

---

[1] Sergeant Ried defined "peer-to-peer" in this context as a "computer to computer connection," and as Detective Lawrence later explained, there is "no central location"; rather, a file is "shared amongst all the computers hooked up to the network at that time."

[2] An IP address is a unique 32-bit-long code number that each computer acquires automatically through its Internet access provider for connecting to the Internet. http://www.businessdictionary.com/definition/IP-address.html (last visited June 17, 2009).

For his investigation, Sergeant Ried used a special search term popular in the child pornography community and discovered several results. Over Appellant's hearsay objection, the trial court allowed Sergeant Ried to testify that he downloaded child pornography files from the IP address assigned to Appellant by his Internet service provider. He stated that IP addresses are like telephone numbers, assigned to only one person. Based on the child pornography[3] Sergeant Ried downloaded from Appellant's IP address, he obtained a grand jury subpoena and a search warrant. Police executed the warrant on Appellant's residence on February 8, 2006. Sergeant Ried retrieved a computer from the residence and took a statement from Appellant's wife.

During trial, the State played an audio recording of a February 8, 2006 interview between Sergeant Ried, Sergeant Smith, and Appellant while they were at the Fort Worth police substation after the warrant was executed. Sergeant Ried testified that, before taking the statement, he read Appellant his *Miranda*[4] rights and did not make any promises or threats regarding Appellant's making the statement. In the recording, Sergeant Ried read the *Miranda* rights,

---

[3] Sergeant Ried downloaded three files from Appellant's IP address: one file containing actual sexual intercourse, one file containing actual lewd exhibition of female genitals, and one file containing actual sexual conduct.

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966); *see* Tex. Code Crim. Proc. Ann. art. 38.22, §2 (Vernon 2005).

3

told Appellant that he was not under arrest, and informed Appellant that he could ask to go home at any time. Appellant voluntarily waived his *Miranda* rights and spoke with the officers.

After waiving his *Miranda* rights, Appellant confirmed that he was the primary user of both the computer and the installed Shareaza software. He claimed that a neighborhood child used the computer occasionally, along with his son. He stated that he formerly used the file-sharing software Kazaa but switched to Shareaza. He installed Shareaza and registered his name, hometown, state, and zip code on the software's user information section. He registered his user name as "C.W." because his nickname was Chip Wenger. Appellant stated initially that he had only movies and "straight" pornographic images on his computer. He denied having child pornography and stated that he did not know how it came to be on his computer unless it was "clicked on accidentally." He stated that he "[tried] to view everything that gets downloaded." Appellant admitted that he had searched for files containing the words "young" and "Lolita," but denied having used other search terms associated with child pornography.

After Sergeant Ried confronted Appellant by informing him that he had personally downloaded child pornography from Appellant's IP address, Appellant admitted that the ages of the children in the videos on his computer were "very

4

early teens" and that the youngest child was "probably eight." Appellant described the video of the youngest child and said that the video was in his "Shared" folder. He explained that he was curious about the visual material. Appellant denied finding the material sexually arousing, but compared his viewing of the pornographic images and videos to the "Taliban beheading [video]," stating that "you'd watch it even though you find it disgusting, but you are drawn to it." He admitted he knew it was illegal.

When asked if he knew how many times he had "allowed people to upload those videos of child pornography from [his] computer," Appellant replied that he "had no idea." When asked if he was "aware that [it was possible for] people [to] upload . . . [his] files," Appellant stated, "I'm assuming that it is, . . . but I think it says that it is—that's part of Shareaza is that [] . . . that's your way to use it is that people pull files from members." Appellant then claimed that he "did not know how to not share and share and separate those items out." He ultimately admitted that there were "probably 300" videos of child pornography on his computer. Appellant described some files as located in folders that had titles such as "extreme," "amateur," "group,"

5

"toy," and "young." He explained that after he obtained the files from Shareaza, he would create "subfolders" and move the files.[5]

The State offered into evidence the files that Sergeant Ried downloaded from Appellant's IP address during his November investigation.[6] Sergeant Ried stated that the files included both videos and photo images of children under eighteen, including the children's genitalia and children engaging in sexual activity. He testified that one can preview partially downloaded files on Shareaza.

While Sergeant Ried testified about the steps of his investigative process on November 28, 2005, the State offered into evidence an exhibit of Shareaza screen captures[7] that showed a folder on a computer at Appellant's IP address with a list of labeled subfolders and 900 files that included file names

---

[5] Officers did not arrest Appellant at the time of the statement; they arrested him four months later in June 2006.

[6] Exhibit 7 was a digital video with the file name "age6-3 (reelkiddymov child abuse underage pre-teen kiddy r@ygold bond age rape molest).mpg." Exhibit 8 was also a video, and its file name was "2_p-e-d-o lolita R@ygold PTHC incest 8 9 10 11 12 yo collection 053 (50).jpg." Exhibit 9 was a photograph, and its file name was "6 year old girl_finger in pussy_preteen child underage pedo P-E-D-O baby incest reelkiddymov(1)(1)(1)(1).jpg."

[7] Also called a "screen shot," a screen capture is a reproduction of the current display on a computer screen, saved as a graphics file. *See* Dictionary.com, http://dictionary.reference.com/browse/screen%20shot (last visited June 17, 2009).

6

graphically describing both adult and child pornography.  After a rule 403 objection and lengthy voir dire, the trial court overruled the objection and admitted the screen captures into evidence.  The trial court gave Appellant a running objection to that evidence.

Detective Lawrence testified that he worked in the Computer Crime Detail of the Major Crimes section of the Fort Worth Police Department, where he investigated computer crimes and conducted computer forensics.  He conducted a forensic examination on Appellant's computer after it was seized.  He located the images alleged in the indictment on Appellant's computer and testified that, in his opinion, those images constituted child pornography.

Detective Lawrence explained that Appellant had stored his pornography under the "My Documents" folder of a second hard drive, D:.  He stated that the terms used in the file names, such as "age 6-3 (reelkiddymov child abuse underage preteen r@ygold bond age rape molest).mpg," were common to his child pornography investigations.  He testified that one file was last accessed on February 7, 2006.  He also testified about the organization of the files on the second hard drive and  stated that they were "pretty well organized."  He stated that, in his opinion, Appellant's possession of the child pornography was not inadvertent, based on the organizational structure of the files and the number of files on the computer.

7

Detective Lawrence confirmed that he found on Appellant's computer all three of the files Sergeant Ried had downloaded via Shareaza on November 28, 2005. Detective Lawrence added that there were other child pornography pictures found in several subfolders other than the "young" subfolder. He also testified that unlike the default Shareaza installation, where downloaded files are automatically shared, Appellant's computer had separate folders for downloaded and shared files and that files had to be moved from the "Download" folder to the "Shared" folder to share the files in question. He demonstrated how a person could make changes to his or her sharing settings by simply selecting "Shareaza Settings."

Appellant was charged by indictment with promotion of child pornography by disseminating visual material on counts one through three of the indictment and possession of child pornography on counts four through seven. The jury returned a verdict of guilty on all counts and assessed a punishment of fifteen years for each promotion count and ten years for each possession count, with some of the sentences consecutive and others concurrent.

### III. Legal and factual sufficiency of the evidence for intentional promotion by dissemination

Appellant argues that there was insufficient evidence to prove he actually and intentionally disseminated child pornography or that he had specific

8

knowledge that the material was child pornography prior to dissemination because there was no proof that he saw the three files alleged to have been shared or that he intended to share the same.

### a.    Legal sufficiency: standard of review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.  The trier of fact is the sole judge of the weight and credibility of the evidence.  *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*,

529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

**b.      Factual sufficiency: standard of review**

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Neal v. State,* 256 S.W.3d 264, 275 (Tex. Crim. App. 2008); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great

10

weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the factfinder's. *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9. Our deference in this regard safeguards the defendant's right to a trial by jury. *Lancon,* 253 S.W.3d at 704.

11

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

### c. Applicable law

The offense of promotion of child pornography is described under penal code section 43.26(e), which provides that "a person commits an offense if: (1) the person knowingly or intentionally promotes or possesses with intent to promote material described by Subsection (a)(1); and (2) the person knows that the material depicts the child as described by Subsection (a)(1)." Tex. Penal Code § 43.26(e) (Vernon 2003). Section (a)(1) of the statute describes the offense of possession of child pornography: "[a] person commits an offense if: (1) the person knowingly or intentionally possesses visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct. *Id.* § 43.26(a).

The term "promote," as defined under section 43.25(a) of the penal code, means "to procure, manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, or advertise or to offer or agree to do any of the above." *Id.* § 43.25(a)(5) (Vernon 2007). A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious

12

objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a) (Vernon 2003). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist or when he is aware that his conduct is reasonably certain to cause the result. *See id.* § 6.03(b).

Circumstantial evidence can be used to prove intent and knowledge. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978); *Krause v. State*, 243 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). The trier of fact may infer intent and knowledge from the acts, words, and conduct of the accused. *Guevara,* 152 S.W.3d at 50; *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982).

### d. Analysis

Appellant challenges the sufficiency of the evidence on three grounds. Appellant argues that the evidence is insufficient to prove (1) that he actually disseminated the child pornography; (2) if he disseminated the child pornography, that the dissemination was intentional or knowing; and (3) that he knew the files in question contained child pornography before Sergeant Ried

13

downloaded them from his computer. We will address each ground separately in our analysis.

### 1. Actual dissemination

In the first part of his sufficiency challenge, Appellant argues that the evidence is insufficient to prove that he actually "disseminated" child pornography. Implicit in his argument is the question of whether sharing digital files through peer-to-peer software like Shareaza constitutes "dissemination."

Several courts have held that making child pornography available for others to access and download through peer-to-peer file-sharing software qualifies as "distribution" or "delivery" to others. *See United States v. Sewell,* 513 F.3d 820, 822 (8th Cir.) (stating that, in the context of file-sharing software Kazaa, "placing a file in a shared folder with descriptive text is clearly an offer to distribute the file"), *cert. denied*, 128 S. Ct. 2517 (2008); *United States v. Carani*, 492 F.3d 867, 876 (7th Cir. 2007) (holding that making pornography available on file-sharing software qualifies as "distribution"), *cert. denied*, 128 S. Ct. 932 (2008); *United States v. Shaffer*, 472 F.3d 1219, 1223 (10th Cir. 2007) (concluding that Shaffer distributed child pornography in the sense of having "delivered," "transferred," "dispersed," or "dispensed" it to others via his computerized stash of images and videos within his Kazaa file-sharing software).

14

In *United States v. Shaffer*, the 10th Circuit Court of Appeals analogized the making available of child pornography through peer-to-peer file sharing software to a self-serve gas station. *See Shaffer*, 472 F.3d at 1223. At a self-serve station, while there may be a roadside sign directing motorists to fill up their own tanks and the owner or attendants may not be present at the station, there is "no doubt that the owner is in the business of distributing, transferring or dispersing gasoline." *Id*. at 1223–24. Much like the gas station owner, the defendant in *Shaffer* "welcomed people to his computer and was happy to let them take child pornography from it." *Id*. at 1224. Thus, just as the owner of a self-serve gas station "distributes" gasoline, one who shares files on a peer-to-peer network "distributes" those files. *See id.*

*Shaffer* and the other cases cited above analyzed the term "distribution," but in the context of peer-to-peer file sharing, there is no significant difference between "distribution" and "dissemination." "Distribute" means, among other things, to spread out; to scatter; to give or deliver, especially to members of a group. *Webster's Ninth New Collegiate Dictionary* 368 (1987). "Dissemination" means to spread; to disperse throughout. *Id.* at 366. Because the terms "distribute" and "dissemination" have similar meanings, the cases holding that peer-to-peer file sharing is "distribution" persuasively answer the question of whether the same activity constitutes "dissemination." Mindful that

15

penal code section 43.25(a) defines "promote" to mean both "distribute" and "disseminate," we hold that making digital files available to others through peer-to-peer file sharing software like Shareaza is "dissemination" within the meaning of section 43.25(a).

The jury heard ample evidence regarding Appellant's dissemination of the child pornography files to Sergeant Ried on November 28, 2005. Sergeant Ried and Detective Lawrence both testified about how their investigations resulted in finding child pornography files stored in subfolders within Appellant's "Shared" folder on his computer. Sergeant Ried explained his process of searching for child pornography on Shareaza and described how he retrieved the indicted files from Appellant's computer by downloading them to his computer in Austin. Detective Lawrence confirmed that, in February 2006, his forensic investigation revealed that Appellant's seized computer contained the same files and user-created subfolders discovered by Sergeant Ried's November investigation. Thus, the evidence was legally and factually sufficient to prove that Appellant actually disseminated child pornography. *See Sewell*, 513 F.3d at 822; *Carani*, 492 F.3d at 876; *Shaffer*, 472 F.3d at 1223.

### 2.    Intentional or knowing dissemination

Next, Appellant argues that there was insufficient evidence to prove he intentionally or knowingly disseminated the files in question. Appellant

16

highlights the testimony that under Shareaza's default settings, the program will share a user's downloaded files automatically. Although Detective Lawrence testified that Appellant had changed the default settings sometime before the State seized his computer so that Appellant had to manually move downloaded files from the "downloads" folder to the "Shared" folder before Shareaza would share them with other users, he was unable to testify that Appellant had so modified the default settings before Detective Ried downloaded the indicted files from Appellant's computer three months earlier. And State's Exhibit 11—the screen captures Detective Ried made when he downloaded the files—indicates that Appellant's shared files were in the default "downloads" folder, not a separate "Shared" folder. Thus, argues Appellant, there is no evidence that he intentionally or knowingly disseminated child pornography because Shareaza automatically shared his downloaded files with other users, including Detective Ried.

But other evidence tends to show that Appellant intentionally or knowingly shared his downloaded files. Most significantly, in his recorded interview, Appellant admitted that he knew Shareaza shared his files: he said that he assumed users downloaded files from him and that the purpose of Shareaza was to allow users (like Detective Ried) to "pull files from members" (like Appellant). Although Appellant claimed in the interview that he did not

17

know "how to not share and share and separate those items out," Detective Lawrence's testimony shows that Appellant did at some point — before the State seized his computer and before the interview — change the default Shareaza settings so that the program did not automatically share Appellant's downloaded files. This shows that — contrary to his claim in the recorded interview — Appellant did know how to "not share and share" files. Detective Lawrence also explained why a Shareaza user like Appellant might want to share files, namely, because Shareaza rewards a user for allowing others to download files from his computers: "[T]he more files you share, the faster you can download other files."

A jury could reasonably infer from this evidence that Appellant knew Shareaza was sharing his downloaded files and knew how to prevent Shareaza from sharing his downloaded files. Thus, the evidence is legally and factually sufficient to show that Appellant intentionally or knowingly disseminated the indicted files despite his argument that Shareaza shared the files automatically and without his knowledge or intent.

### 3. Knowledge of the actual content of files

Finally, Appellant argues that the evidence is insufficient to show that he knew the files in question contained child pornography when Sergeant Ried downloaded them.

18

There is no direct evidence that Appellant viewed the files in question before Sergeant Ried downloaded them from Appellant's computer; both Sergeant Ried and Detective Lawrence admitted that they had no such proof. But Appellant said in his recorded interview that he "tried" to view everything he downloaded. Sergeant Ried testified that Shareaza allows a user to "preview" files even before the download is complete. Appellant admitted that he searched for and downloaded child pornography by inputting search terms like "young" and "Lolita" (he denied that "Lolita" yielded any "matches," but one of the indicted images has the term "Lolita" in its file name). He manually organized his child-pornography collection in folders with names like "young." It appears from State's Exhibit 11 that the "young" folder existed on Appellant's computer when Sergeant Ried downloaded the indicted files, and Detective Lawrence testified that he found those same files in the "young" folder on Appellant's computer.

Most telling are the explicitly descriptive names of the indicted files themselves, which included the terms "age6-3," "kiddy", "child abuse," "underage," "rape," "molest", "p-e-d-o," "Lolita," "PTHC" (Pre-Teen Hard Core), "8 9 10 11 12 yo," "6 year old," and "baby incest." Detective Lawrence testified that he knew what the files depicted from the file names alone before he viewed them. There was testimony that descriptive file names

19

can be inaccurate or misleading, but in his recorded interview, Appellant volunteered that sometimes, the names are accurate: "[I]t says, 'young teens,' and you pull it up, and it's a 35-year-old woman . . . but some of the stuff does come up that . . . is real." The record shows that the descriptive file names of the indicted files were indeed accurate. Finally, the record shows that Appellant deliberately selected the descriptively-named files for downloading; as Detective Ried explained, Shareaza does not randomly download files.

From Appellant's admission that he "tried" to view everything he downloaded, from the fact that he organized the indicted files in a folder labeled "young," and from the descriptive names of the files, a jury could reasonably infer that Appellant knew the indicted files depicted child pornography when he disseminated them to Sergeant Ried, despite the lack of direct evidence that Appellant actually viewed the files' contents before that date.

### e. Conclusion

Viewing the evidence in a light most favorable to the prosecution, a rational jury could have determined beyond a reasonable doubt (1) that Appellant actually disseminated the images, (2) that he acted intentionally and knowingly, and (3) that he knew that the computer images in question depicted children under 18 years of age engaging in sexual conduct. We hold that the

20

evidence is legally sufficient to support the jury's verdict. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

Viewing the evidence in a neutral light, we cannot say that the evidence is so weak that the jury's determination that Appellant intentionally or knowingly disseminated child pornography is clearly wrong or manifestly unjust. We also cannot say that conflicting evidence greatly outweighs evidence supporting conviction so that the jury's determination is manifestly unjust. *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417. We therefore hold that the evidence is factually sufficient to support the jury's verdict, and we overrule Appellant's first point.

## IV. Admission of hearsay testimony

In his second point, Appellant argues that the testimony identifying his IP address and Internet service provider constituted hearsay and should not have been admitted because it was an out-of-court computer-stored statement offered for the truth of the matter asserted. Appellant objected to Sergeant Ried's initial statements regarding the IP address but did not obtain a running objection. Further, toward the end of Sergeant Ried's testimony and when Detective Lawrence testified, Appellant did not object when the State elicited additional IP address testimony. Sergeant Ried confirmed without objection the existence of the IP address when describing Exhibit 11 and testified that the

21

address was assigned to Appellant.  Detective Lawrence recited the numbers in the IP address without any objection and stated that it came from Appellant's computer and matched the submitted IP address from the Attorney General's office.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070 (1999).  A party must continue to object each time the objectionable evidence is offered.  *Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App.), *cert. denied*, 528 U.S. 1026 (1999); *Ethington v. State*, 819 S.W.2d 854, 858–59 (Tex. Crim. App. 1991).  A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling.  *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *Johnson v. State*, 803 S.W.2d 272, 291 (Tex. Crim. App. 1990), *cert. denied*, 501 U.S. 1259 (1991), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991).  This rule applies whether the other evidence was introduced by the defendant or the State.  *Leday*, 983 S.W.2d at 718.

22

Because Appellant did not obtain a running objection for his hearsay objection during Ried's testimony or specifically object to the IP address testimony elicited from Detective Lawrence, he did not preserve error for our review. *Fuentes*, 991 S.W.2d at 273. We must therefore overrule Appellant's second point.

## V.     Evidence of Extraneous Offenses

In his third point, Appellant argues that the trial court's admission of the exhibit showing a list of subfolders and 900 file names from his "Shared" folder of Shareaza in addition to the files with which he was charged was improper because it included both adult as well as child pornography, thus constituting improper extraneous offense evidence that was unduly prejudicial under Texas Rules of Evidence 403 and 404(b). The State argues that because Appellant admitted his guilt at punishment, he is estopped from raising this point unless he can show that admission of this evidence implicated a fundamental right.[8]

---

[8] *See Leday*, 983 S.W.2d at 724 (limiting the doctrine announced in *DeGarmo v. State*, 691 S.W.2d 657, 661 (Tex. Crim. App.), *cert. denied*, 474 U.S. 973 (1985)), and holding that when an appellant admitted his guilt at punishment, appellate court must determine if appellant asserts fundamental rights or guaranties — which he cannot be estopped from asserting — or whether the truth-finding function prevails to estop him from asserting nonfundamental complaints).

Because we hold the evidence was admissible and not unduly prejudicial, we need not address this contention.

We review a trial court's evidentiary ruling for abuse of discretion. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). A trial court abuses its discretion only when the decision lies outside the zone of reasonable disagreement. *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996), *cert denied*, 520 U.S. 1200 (1997). The trial court has wide latitude to admit or exclude evidence of extraneous offenses*. Montgomery,* 810 S.W.2d at 390; *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd.). We give great discretion to the trial court in matters of admissibility of evidence if correct under any theory of law, even if the trial court's underlying reason was wrong*. See Romero v. State*, 800 S.W.2d 539, 543–45 (Tex. Crim. App. 1990).

Texas Rule of Evidence 404(b) prohibits admission of evidence of extraneous offenses to prove that, on the occasion in question, the defendant acted in conformity with the character shown by other bad acts. Tex. R. Evid. 404(b); *see Santellan v. State*, 939 S.W.2d 155, 168 (Tex. Crim. App. 1997); *Jones v. State*, 119 S.W.3d 412, 418 (Tex. App.—Fort Worth 2003, no pet.). However, evidence offered to prove motive, opportunity, intent, preparation,

plan, knowledge, intent, or absence of mistake or accident is not barred by Rule 404(b). *Santellan*, 939 S.W.2d at 168. When the defendant objects under Rule 404(b), the State must satisfy the trial court that the extraneous offense has relevance apart from its character-conformity value. *See Rankin v. State,* 974 S.W.2d 707, 718 (Tex. Crim. App. 1998) (op. on reh'g); *Montgomery*, 810 S.W.2d at 387.

An extraneous offense has noncharacter-conformity relevance when it has any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *See* Tex. R. Evid. 401; *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). Extraneous offense evidence that tends to rebut a defensive theory is relevant beyond its character-conformity value. *Bass v. State,* 270 S.W.3d 557, 563 (Tex. Crim. App. 2008); *Montgomery*, 810 S.W.2d at 386–87; *Jones*, 119 S.W.3d at 419. The State argues that the trial court did not abuse its discretion in admitting the list of subfolders and file names because it was admissible to rebut Appellant's defensive theory, to show his knowledge and intent to possess and promote the indicted images and his plan to store and share those images, and to show that his possession and promotion of those images was not a result of accident or mistake.

Appellant's defensive theory that he sought to develop on cross-examination of the officers was that, if any child pornography was downloaded onto his computer, it must have been accidental, and that it may have been shared with others before he viewed the content and without his knowledge. On cross-examination of Sergeant Ried, Appellant created an impression that he had only one file available for downloading and that that file could have been downloaded by others and "shared" before he became aware of it. The State's exhibit showing an extensive list of subfolders and file names tended to show that Appellant was experienced in searching for both child and adult pornography, that he had numerous files of both kinds available for sharing, and that he organized his pornography collection by type of image, including creating a special subfolder entitled "young." His creation—or retention—of the highly descriptive as well as offensive and lurid file names, along with their organization, not only made them easily searchable by other users but was also relevant to show that he was aware of the illegal nature of his conduct and that the presence of the indicted images on his computer was not accidental. The evidence was relevant to the issues of motive, intent, plan, knowledge, and lack of mistake or accident. We agree with the State that the exhibit had relevance apart from evidence of character-conformity. *See* Tex. R. Evid. 404(b).

26

Evidence relevant under Rule 404(b) may nevertheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by undue delay or needless presentation of cumulative evidence. Tex. R. Evid. 403. "Probative value" refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that evidence. *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). "Unfair prejudice" refers to a tendency to suggest a decision on an improper basis, commonly although not necessarily an emotional one. *Id*. Only *unfair* prejudice provides the basis for exclusion of relevant evidence. *Montgomery,* 810 S.W.2d at 389.

The relevant criteria in performing a rule 403 balancing test include (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence, balanced against (3) any tendency of the evidence to suggest conviction on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that is not equipped to evaluate the probative force of the evidence, and (6) the liklihood that presentation of the evidence will consume an inordinate amount of time or

27

merely repeat evidence already admitted. *Gigliobianco,* 210 S.W.3d at 641–42*.*

We presume that the probative value substantially outweighs the danger of unfair prejudice. *Montgomery*, 810 S.W.2d at 389. It is therefore the defendant's burden to demonstrate that the danger of unfair prejudice substantially outweighs the probative value. *Hinojosa v. State*, 995 S.W.2d 955, 958 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Poole v. State,* 974 S.W.2d 892, 897 (Tex. App.—Austin 1998, pet. ref'd). It is not incumbent on the trial court to perform the balancing test on the record. *Yates v. State,* 941 S.W.2d 357, 367 (Tex. App.—Waco 1997, pet. ref'd). In reviewing the trial court's balancing test determination, we are to reverse the trial court's judgment "rarely and only after a clear abuse of discretion.*" Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).

As discussed above, the first two factors weigh in favor of admitting the extraneous offense evidence. The evidence was probative to rebut Appellant's defensive theory that he did not intentionally or knowingly possess or promote the indicted images; many of the images listed in the State's exhibit 11, like the indicted images, contain labels including terms such as "teen," "child," and "kiddy" and make it more likely that he was fully aware of the specific nature of the material that he downloaded. The evidence was needed by the State to

28

show that Appellant organized, stored, and shared the downloaded images as described by their titles and that his doing so was not the result of mistake or accident.

The third, fourth, and fifth criteria of the balancing test do not weigh heavily in favor of exclusion. In contrast to the items with which Appellant was charged with possessing and promoting, the exhibit of which he complains consists only of a list of written titles; the corresponding images were never shown to the jury. Hence, the exhibit did not have a definite tendency to suggest a decision on an improper basis, to unduly confuse or distract the jury from the main issues regarding the indicted images, or to invite the jury to give undue weight to that evidence. Moreover, presentation of the evidence did not consume an inordinate amount of time nor merely repeat evidence already admitted.

Appellant complains of the offensive and repulsive nature of the titles shown and points to testimony that some of the titles may have been misleading or incorrect, but he acknowledges that many, if not most, were "real." Moreover, there was evidence that he selected the descriptively-titled files for downloading. Thus, we agree with the State that the exhibit listing the titles was the best and least prejudicial method of rebutting Appellant's

29

defensive theory that he may have downloaded images of child pornography accidentally or shared them without knowledge of their content.

Additionally, we note that the jury charge contains a proper reasonable doubt instruction. The jury was instructed not to consider evidence of Appellant's commission of any crimes, wrongs, or acts other than the offenses alleged in the indictment unless it found such commission beyond a reasonable doubt. We hold that the trial court did not abuse its discretion in admitting the State's exhibit because the probative value of that evidence was not substantially outweighed by the danger of undue prejudice. We overrule Appellant's third point.

## VII.   Conclusion

Having overruled Appellant's three points, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and MEIER, JJ.

PUBLISH

DELIVERED:  June 25, 2009

30