

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00069-CR

TRACY LYNN ESCOBEDO                                              APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

----------

## FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

Appellant Tracy Lynn Escobedo appeals his conviction for aggravated injury to a child with a deadly weapon. *See* Tex. Penal Code Ann. § 22.04(a), (e) (West 2011). Appellant pleaded not guilty. The jury found him guilty and assessed his punishment at life imprisonment with a $10,000 fine, and the trial court sentenced Appellant accordingly. In two issues, Appellant contends that

---

[1]*See* Tex. R. App. P. 47.4.

the trial court improperly denied his challenges for cause and that the trial court erred by admitting evidence of extraneous acts or offenses. We affirm.

## II. Background[2]

On January 19, 2009, Appellant had an argument with Cynthia Stout at her home. Stout lived at the home with her children and husband, and Appellant had been staying at the Stout residence "on and off" for three or four months.[3] After the argument, Appellant gathered some clothes, a bottle of Rooto, and a bottle of crystal Drano and put them into a garbage bag. Appellant took the garbage bag and began walking toward Gainesville.[4] Stout, with four of her children inside the truck, followed Appellant and offered him a ride, and she drove the truck, with the windows down, slowly along the road as she asked Appellant to get in the truck. According to Appellant, he decided to get in the truck when he realized Stout was not going to leave. Appellant testified that he tossed the garbage bag— containing the clothes, Rooto, and crystal Drano—toward the bed of the truck because he did not want Stout to know that he had the Rooto and crystal Drano and because he did not want them inside the truck with the children. However, the garbage bag went inside the cab of the truck instead of the bed, and sulfuric acid from the bottles inside the garbage bag severely burned each of the four

---

[2]Because Appellant does not challenge the sufficiency of the evidence, we only briefly set forth the evidence presented at trial.

[3]Appellant is the father of Stout's youngest child.

[4]The Stout residence is in a rural part of Cooke County.

children. Stout drove the children and Appellant to Gainesville, and paramedics arrived to treat the children. Appellant testified that while the paramedics treated the three oldest children (the youngest child was the least severely injured), he left the area with the youngest child in Stout's truck because Stout told him to, returned to the Stout residence, left the youngest child at the residence with Stout's eleven-year-old daughter (who was not in the truck and had remained at the residence), and asked the neighbors for a ride back to Gainesville. Appellant testified that he wanted to go back to Gainesville to borrow a friend's car and drive to the hospital.

All four children were taken by helicopter to Parkland Hospital for additional treatment. The oldest child—the one for which Appellant was charged with injuring in this case—was hospitalized for two months and has permanent scarring.

### III. Challenges for Cause

Appellant contends in his first issue that the trial court erred by denying his challenges for cause to six venire members because those venire members could not differentiate between the clear and convincing and beyond a reasonable doubt standards of proof and might have convicted him on the lesser burden. The State responds that Appellant failed to preserve his first issue for appellate review because he did not exercise peremptory strikes on the six venire members he challenges on appeal.

3

To preserve error regarding a trial court's denial of a challenge for cause, a defendant must: (1) exercise a peremptory challenge on a venire member whom the trial court should have excused for cause; (2) exhaust all of his peremptory challenges; (3) request and be denied an additional peremptory challenge; (4) identify the objectionable venire member who actually sat on the jury whom he would have struck otherwise; and (5) make the trial court aware of his complaint at a time and in a manner in which it could be corrected. *Loredo v. State*, 159 S.W.3d 920, 923 (Tex. Crim. App. 2004); *see Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010); *Johnson v. State*, 43 S.W.3d 1, 5–6 (Tex. Crim. App. 2001); *see also* Tex. R. App. P. 33.1. Further, an appellant challenging denials of challenges for cause is entitled to appellate review of denials only with respect to jurors he used statutory peremptory strikes to exclude. *Busby v. State*, 253 S.W.3d 661, 671 (Tex. Crim. App.), *cert. denied*, 129 S. Ct. 625 (2008). If the issue has been preserved, the appropriate standard of review for the denial of a challenge for cause is an abuse of discretion standard. *Curry v. State*, 910 S.W.2d 490, 493 (Tex. Crim. App. 1995).

Appellant failed to preserve his complaint for our review. He complains of the trial court's denial of his challenges for cause to venire members one, two, ten, twelve, seventeen, and thirty-nine, but Appellant did not use any of his peremptory strikes on those venire members. Instead, Appellant used his peremptory strikes on venire members six, eight, fifteen, sixteen, twenty-three, twenty-eight, thirty-two, forty-two, forty-four, forty-eight, and fifty-six. Thus,

4

Appellant could have but did not exercise his available peremptory strikes on the venire members that he now contends should have been dismissed for cause. *See Busby*, 253 S.W.3d at 670–71 (holding appellant could only complain on appeal about three of seven objectionable jurors because he did not use peremptory strikes for the other four). Appellant therefore failed to preserve his first issue for appellate review, and we overrule it.

## IV. Admission of Extraneous Acts or Offenses

Appellant argues in his second issue that the trial court abused its discretion by admitting evidence concerning his knowledge and use of methamphetamine during his cross-examination by the State. The State responds that Appellant did not preserve his complaint for appeal and that the evidence was admissible to rebut Appellant's defensive theory that he did not know the sulfuric acid would cause the harm that it did.

## A. Standard of Review

We review a trial court's decision to admit or to exclude evidence under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App.), *cert. denied*, 522 U.S. 917 (1997). A trial court does not abuse its discretion as long as the decision to admit or to exclude the evidence is within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (op. on reh'g); *see Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1200 (1997). "We give great

5

discretion to the trial court in matters of admissibility of evidence if correct under any theory of law, even if the trial court's underlying reason was wrong." *Wenger v. State*, 292 S.W.3d 191, 202–03 (Tex. App.—Fort Worth 2009, no pet.) (citing *Romero v. State*, 800 S.W.2d 539, 543–45 (Tex. Crim. App. 1990)).

## B. Applicable Law

It is improper to try a defendant for being a criminal generally. *Alba v. State*, 905 S.W.2d 581, 585 (Tex. Crim. App. 1995) (citing *Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992), *cert. denied*, 516 U.S. 1077 (1996)). In that regard, rules of evidence 608 and 609 limit the ways by which a witness's credibility may be impeached. *See* Tex. R. Evid. 608, 609. Further, rule of evidence 404(b) states, "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Tex. R. Evid. 404(b). However, rule 404(b) also provides that extraneous offense evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* This list is illustrative, rather than exhaustive. *Johnston v. State*, 145 S.W.3d 215, 219 (Tex. Crim. App. 2004). And "[r]ebuttal of a defensive theory such as mistake or accident is also one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b)." *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003); *see Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009), *cert. denied*, 130 S. Ct. 3411 (2010).

## C. Discussion

Appellant testified on direct-examination that he intended to toss his bag into the back of the truck rather than the cab, that he had "no clue that [the sulfuric acid] would do damage like it did," that he would not intentionally hurt the children, and that he took the youngest child to the Stout residence because Stout told him to do so. At a hearing outside the jury's presence and before the State's cross-examination of Appellant, the State sought a ruling that it could question Appellant about his drug use, arguing that Appellant had opened the door to the admission of evidence concerning his drug use by testifying about why he fled and suggesting that Appellant actually fled to hide the drug paraphernalia at the house. Appellant argued that the State's theory was "quite a stretch" and would not "get around Rule 608 and 609 about extraneous acts and offenses." The trial court suggested, however, that Appellant's prior use of the sulfuric acid would be admissible concerning his knowledge of its dangerousness, and it overruled Appellant's objection.

Before any further testimony and after additional argument outside the jury's presence in which Appellant raised relevance and rule 403 objections,[5] the trial court confirmed with Appellant that he intended to seek an instruction on lesser-included charges of criminal negligence or recklessness and asked whether Appellant's prior use of sulfuric acid "would impact whether or not he

---

[5]Appellant does not urge relevance or rule 403 arguments on appeal.

7

was criminally negligent or reckless." Appellant's counsel responded, "If [the State] could limit this to his knowledge, specific knowledge about just the drain cleaner, I agree. I think that would have an effect. But [the State is] going to bring up all kinds of other stuff." After hearing further argument from the State, the trial court stated that it did not know what the State would offer until it was offered and that it would rule on Appellant's objections as they were made to the State's questions.

The State then began its cross-examination of Appellant, and Appellant testified without objection that he knew that methamphetamine is manufactured by combining sulfuric acid with other ingredients, that sulfuric acid was dangerous but "not to the extent to the damage that it did," that pseudoephedrine is used to manufacture methamphetamine, and that he had manufactured methamphetamine at the Stout residence about a week before the incident. Appellant, also without objection, identified three additional ingredients used to manufacture methamphetamine[6] and testified that he kept his "meth making equipment" in a ditch near the Stout residence "across the fence where the kids couldn't get to it."

Appellant then requested a bench conference and objected to "any of this evidence" and "everything [the State is] doing from now on" because it was

---

[6]Appellant successfully objected to the admission of photographs of the other ingredients, but he did not object to the questions asking him to identify the ingredients and confirm their use in the manufacturing process.

extraneous and prejudicial. Appellant argued that the State had already established that he was manufacturing methamphetamine and the ingredients used to manufacture it. The trial court overruled the objection, stating that part of Appellant's testimony was that he would "never do anything to hurt the kids" and that the State was offering pictures of drug paraphernalia at the residence. During further cross-examination, Appellant described in detail the process that he used to manufacture methamphetamine, and he testified that he stored the materials in a wooded area more than 100 feet from the residence in an area where the children did not play. Appellant acknowledged, however, that he does not know where the children are at all times and that they explore the neighborhood when they play.

Appellant then, without objection, described two more ingredients used to manufacture methamphetamine, acknowledged that "meth cooks" sometimes steal some of the ingredients from others who possess it legally, and identified from a photograph a hose that could be used to steal the ingredient.[7] Also without objection, Appellant identified the person from whom he obtained the hose and testified that he last used methamphetamine about a week before the incident and that he used methamphetamine approximately forty out of fifty-two weekends in a year. When the prosecutor asked why he did not "just stop" using methamphetamine, Appellant objected, and the trial court overruled the objection

---

[7]Appellant unsuccessfully objected to the photograph of the hose, but he did not object to the question about the use of the hose.

9

but instructed the prosecutor to limit her questioning to identification of the drug paraphernalia recovered from the Stout residence after the incident. After the court's ruling, the trial court admitted without further objection three photographs of a box and its contents, which Appellant identified as his "meth lab equipment." Appellant also testified without objection that sulfuric acid forms a gas when it contacts other substances when making methamphetamine and that he did not sell methamphetamine at the Stout residence.

Appellant rested after his cross-examination by the State, and the State called Cooke County Sheriff's Deputies Mitchell Nelson and Drue Pickle as rebuttal witnesses. Deputy Nelson identified several photographs he took at the Stout residence the day of the incident. Appellant objected to one of the photographs, but the other photographs depicted ingredients used to manufacture methamphetamine. Deputy Pickle testified that he assisted in a search of the Stout residence on the day of the incident, and he identified several photographs taken during the search. Two of the photographs taken in the residence, which were admitted without objection from Appellant, depicted drug paraphernalia commonly used to smoke narcotics.

In his brief, Appellant argues that extraneous acts and offenses are inadmissible under rules of evidence 608 and 609 and acknowledges that if a "defendant opens the door to such, the Court may allow the State to exploit that opening." Appellant contends, however, that the State "is limited to going into only those things germane to the matter offered by the defendant and only if its

10

probative value outweighs its prejudicial effects." The remainder of Appellant's argument is devoted to an explanation of how the evidence of his drug use and manufacture of methamphetamine exceeded the permissible scope of what the State should have been allowed to explore. Appellant does not, however, address whether the evidence concerning his use and manufacture of methamphetamine may have been admissible for other purposes such as to rebut his defensive theories of mistake, lack of intent to harm the children, and lack of knowledge concerning the dangerousness of sulfuric acid.

Relevant evidence may be admitted pursuant to rule 404(b) when it rebuts defensive theories such as accident or mistake. *See Williams*, 301 S.W.3d at 687; *Moses*, 105 S.W.3d at 626; *see also* Tex. R. Evid. 404(b). Much of the testimony discussed above was relevant to Appellant's defensive theories because it revealed Appellant's knowledge of sulfuric acid and its volatility and because it showed that Appellant manufactured methamphetamine at the Stout residence where the children could access the manufacturing equipment. *See* Tex. R. Evid. 404(b) (providing that extraneous offense evidence may be admissible to show intent, knowledge, or absence of mistake or accident); *see also Williams*, 301 S.W.3d at 687; *Moses*, 105 S.W.3d at 626. We therefore hold that the trial court did not abuse its discretion by admitting evidence concerning Appellant's use and manufacture of methamphetamine at the Stout residence. Moreover, Appellant does not differentiate what evidence arguably exceeded the trial court's initial ruling and seems to argue that none of the evidence concerning

11

his use or manufacture of methamphetamine was admissible. But to the extent that Appellant contends that only some of the evidence concerning his use and manufacture of methamphetamine should have been admitted by the trial court, we hold that Appellant failed to preserve that complaint for appellate review by failing to object each time the evidence was offered or seeking a running objection. *See Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998) ("[O]verruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling."); *Miramontes v. State*, 225 S.W.3d 132, 144 (Tex. App.—El Paso 2005, no pet.) (holding complaint not preserved despite numerous objections to extraneous offense evidence because other evidence of same events admitted without objection). We therefore overrule Appellant's second issue.

## V. Conclusion

Having overruled each of Appellant's two issues, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 31, 2011