

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00020-CR

CHARLES RAY DIAZ                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1350578D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Charles Ray Diaz appeals from his conviction for aggravated assault with a deadly weapon. In one issue, Diaz contends the trial court violated his confrontation rights under the United States and Texas Constitutions when it granted two motions in limine requiring him to approach the bench before questioning a State witness about the witness's prior deferred adjudications.

----------

[1]*See* Tex. R. App. P. 47.4.

Because Diaz did not preserve this issue for our review, we affirm the trial court's judgment.

On November 23, 2013, Diaz and his cousin, Leonard Salmeron, were at Roy's Sports Bar and Grill (Roy's) in Grand Prairie, Texas. Salmeron had driven Diaz to Roy's, and the two remained there until last call, after which Salmeron left to get his truck and wait for Diaz. A little while later, Diaz came out of Roy's, walked to the passenger side of Salmeron's vehicle, and opened the passenger door. After stepping out of his truck to talk to some girls he recognized from Roy's, Salmeron heard gunshots. Salmeron turned to see what was happening and saw Diaz firing a gun at Trinity Smith, who was head of security at Roy's. Diaz shot Smith multiple times, but Smith survived.

A grand jury indicted Diaz on a charge of aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. § 22.02(a)(2) (West 2011). The indictment contained a habitual-offender paragraph alleging that Diaz had previous convictions for aggravated assault with a deadly weapon and deadly conduct. A jury found Diaz guilty of the offense charged, and Diaz elected to have the court assess his punishment. Diaz pleaded true to the habitual-offender paragraph, and the trial court sentenced him to forty-five years' confinement.

At trial, the State disclosed that Salmeron had been placed on deferred adjudication community supervision in 2001 for charges of deadly conduct and criminal mischief. The State represented that Salmeron had "successfully completed" the five-year term of community supervision for deadly conduct and

2

that the criminal mischief charge had also been "dismissed" in 2006 after the community supervision term was completed. Before calling Salmeron to the stand, the State made an oral motion in limine requesting that Diaz be required to approach the bench before questioning Salmeron about his prior deferred adjudication for deadly conduct. In response, Diaz objected as follows:

> Judge, we're going to ask that we be allowed to get into it. We believe it's probative to the case at hand because of the . . . nature of the offense for which he pled guilty in 2001.
>
> Furthermore, we would say that it's within the ten-year time limit because he did not complete the probation until 2006. We think that the information if not given to the jury could leave a false impression of the witness to the jury. We think that in order to put on a proper defense for Mr. Diaz, not only are we entitled to it, but . . . it would be something if not allowed in could potentially be cause for reversal.

The trial court granted the State's motion, stating that Diaz needed to approach the bench before questioning Salmeron about his prior deferred adjudication for the deadly-conduct charge. The trial court then took a brief recess.

Following the recess, the State urged a second motion in limine, requesting that Diaz be required to approach the bench before questioning Salmeron about his deferred adjudication for the criminal-mischief charge. Diaz "renew[ed] [his] same objection that it [arose] from the same incident and that the probative value that the jury would get from knowing about Salmeron's propensity for violence and shooting guns would be beneficial to them in this case at hand." The trial court stated that its ruling would remain the same. The State then called Salmeron to the stand. Although Diaz cross-examined

3

Salmeron following the State's direct examination, the record shows that Diaz did not approach the bench to obtain a final ruling on the admissibility of Salmeron's deferred adjudications, and Diaz does not point us to any place in the record showing that he obtained such a ruling at any other time during the trial. Diaz argues on appeal, however, that the trial court abused its discretion by "refusing" to allow him to question Salmeron about his previous deferred adjudications.

Ordinarily, a party must preserve an issue during trial in order to raise it on appeal. Tex. R. App. P. 33.1; *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). To preserve an error for our review, a party must make a timely request, objection, or motion in the trial court specifically stating the grounds for the ruling the party sought, unless the grounds are apparent from the context. Tex. R. App. P. 33.1(a)(1)(A); *Wenger v. State*, 292 S.W.3d 191, 202 (Tex. App.—Fort Worth 2009, no pet.). In addition, the trial court must rule, expressly or implicitly, on the party's request, objection, or motion, or the party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2). These preservation requirements extend even to complaints of constitutional error, including the complaint that a trial court's ruling violated a party's right to confront the witnesses against him under either the United States or Texas Constitutions. *See Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009); *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990).

4

In order to base an appellate complaint on a trial court's erroneous exclusion of evidence, a party must have obtained an adverse ruling from the trial court that excluded the evidence the party wished to have admitted. Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a); *see Norman v. State*, 523 S.W.2d 669, 671 (Tex. Crim. App.), *cert denied*, 423 U.S. 930 (1975). A trial court's ruling on a motion in limine is not a final ruling on the admissibility of evidence that falls within the scope of the motion. *Norman*, 523 S.W.2d at 671; *Erlandson v. State*, 763 S.W.2d 845, 853 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). Rather, a ruling on a motion in limine is only a preliminary ruling and is subject to reconsideration during the course of a trial. *Norman*, 523 S.W.2d at 671. For this reason, merely objecting to a trial court's ruling on a motion in limine does not preserve error for appellate review. *Id.* Here, Diaz never requested an opportunity to make a record outside of the jury's presence concerning the testimony he desired to elicit from Salmeron, nor did he ever obtain a final ruling on the admissibility of Salmeron's prior deferred adjudications.

In addition, Diaz did not object to the State's motions based on a violation of his confrontation rights under either the United States or Texas Constitutions. Rather, Diaz's objections were based on the Texas Rules of Evidence. *See* Tex. R. Evid. 401–02, 609. Constitutional objections and evidentiary objections "are neither synonymous nor necessarily coextensive." *Holland v. State*, 802 S.W.2d 696, 700 (Tex. Crim. App. 1991). Thus, Diaz's evidentiary objections did not

5

provide the trial court with notice of the constitutional error he now raises on appeal. *See id.*

For the foregoing reasons, we hold that Diaz failed to preserve his sole issue for our review. Tex. R. App. P. 33.1. We therefore overrule Diaz's sole issue and affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: LIVINGSTON, C.J.; GABRIEL and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 28, 2016