NO. 07-10-0147-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A  

 

 JULY 26, 2011



 

 



 

 

ENRIQUE JARAMILLO PEREZ, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 

 



 

 FROM THE 54TH DISTRICT
COURT OF McLENNAN COUNTY;

 

NO. 2009-483-C2; HONORABLE MATT JOHNSON, JUDGE



 

 



 

Before CAMPBELL and HANCOCK and PIRTLE,
JJ. 

 

 

MEMORANDUM OPINION

            Appellant, Enrique Jaramillo Perez,
was convicted following a jury trial of one count of aggravated sexual assault
of a child[1]
and three counts of indecency with a child.[2]  At the punishment phase of his trial, the
jury found two enhancement allegations to be true and assessed his sentence at life
imprisonment on each count.  The trial
court ordered Count I to run concurrently with any other sentence, Count II to
run consecutive to Count I, Count III to run consecutive to Count II, and Count
IV to run consecutive to Count III.  In
three points of error, Appellant asserts the trial court erred by (1) admitting
evidence of an extraneous offense to rebut
the defense of fabrication, (2) admitting evidence of an extraneous offense when
the probative value of the evidence was substantially outweighed by its
prejudicial effect, and (3) admitting hearsay testimony by two witnesses
regarding statements made by the victim. 
Subject to a modification of the judgment in Count I pertaining to the
assessment of costs of court, discussed hereinbelow, we affirm.

Background

            On April 8, 2009, a McLennan County Grand
Jury returned a four count indictment alleging that (1) on or about February 2,
2009, Appellant knowingly caused the penetration of the sexual organ of D.P. (his
granddaughter) with his finger when D.P. was younger than seventeen years old
and not his spouse; (2) on or about February, 2, 2009, Appellant, with the
intent to arouse or gratify his sexual desire, intentionally and knowingly
engaged in sexual contact with D.P. by touching her breast when D.P. was
younger than fourteen years old and not his spouse; (3) on or about August 10,
2008, Appellant, with the intent to arouse or gratify his sexual desire,
intentionally and knowingly engaged in sexual contact with D.P. by touching her
breast when D.P. was younger than fourteen years old and not his spouse; and
(4) on or about August 20, 2008, Appellant with the intent to arouse or gratify
his sexual desire, intentionally and knowingly engaged in sexual contact with
D.P. by touching her breast when D.P. was younger than fourteen years old and
not his spouse.[3]

            In
March 2010, a two-day jury trial was held. 
The State's first witness was Peggy Sheppard, a Sexual Assault Nurse
Examiner who examined D.P. on February 2, 2009. 
Sheppard testified that D.P. told her that her grandfather, Appellant,
had been touching her in a sexual way for a year.  She testified D.P. told her that, on February
2, 2009, Appellant picked her up from school and drove her to Walmart where he
rubbed her vagina and touched her breasts. 
On cross-examination, Appellant's counsel inquired whether D.P. was mad
at her grandfather and Sheppard testified that D.P. told her that she "got
mad at grandpa Monday."[4]
 

            D.P.
testified that she was fourteen years old at the time of trial.  Her mother was Marizela Welsch and her
grandfather was Appellant.  She testified
that, when she was in the fifth grade, her grandfather took care of her and her
brother and sisters.  She didn't like
living at his house because he touched her in her bedroom more than once but
less than five times.  She testified he
would wake her up at night when she was sleeping and touch her breast and
vagina.  She would tell him to leave her
alone but he would continue touching her underneath her clothes.  He tried to give her money to let him touch
her, but she refused.  She once woke up
to find Appellant on top of her and told him to get off her.  He ignored her, unzipped his pants, and tried
to take her pants off while attempting to penetrate her with his penis.  When her panties were off, his attempts hurt
her.  Ultimately, she was able to push
him off.   

            D.P. also testified that, after she
moved to another house, Appellant picked her up after school and took her to
Walmart.  While they were in his car,
Appellant rubbed her vagina under her clothes with his finger.  She became angry and told him to stop but he
continued rubbing.  He threatened to hit
her if she didn't allow him to continue. 
He also touched and squeezed her breast underneath her clothes.  Afterwards, he took her to a sporting goods
store, bought her some athletic shoes and told her he had bought her something
so he could touch her again.  She was
sad, afraid and scared.  When he took her
to a cemetery to teach her to drive, he touched her on the upper thigh of her
leg while someone else was in the car. 
She testified that the first adults she told about the sexual abuse were
her mother and Shaundale Garcia. 
Afterwards, her mother called the police and, after the police arrived,
they took her to the hospital.

            On
cross-examination, Appellant's counsel asked D.P. whether it was "possible
Appellant was trying to wake you up or that you were dreaming?"  He also asked the following questions, in
pertinent part:

Q:  Okay.  Do you recall giving a statement to Ms.
Clark, a detective?

A.  Yes.

Q.  Did you tell
Ms. Clark that you told your mom lots of times and nothing happened?

A.  Yes, but --

Q.  Why would
you tell Ms. Clark something that wasn't the truth?

A.  I don't know
really.

*   *   * 

Q.  Okay.  And you're telling us today that when you
spoke to Ms. Clark that you lied to her; is that correct?

A.  Yes.  

Q.  Okay.  And you can tell us why you would lie to
somebody, a police detective?

A.  Because I
really didn't want to tell her.

*   *   *

A.  I didn't
want to tell her all the details.  

*   *   *

Q.  . . . But
you were out late one night, correct?

A.  Yes.

Q.  And when you
went home that's when your mother was having a talk with you and that's when
you brought this up about your grandfather doing these things?

A.  Yes.  

Q.  Okay.  Did you make these things up about your
grandfather so you wouldn't get in trouble? 


A.  No.  They asked me about it.  I didn't just tell them.

Q.  Okay.  When you say "they asked me," who?

A. 
[Shaundale Garcia] and my mom.

            Marizela Welch then testified that, on February 7, 2009
in the early morning hours, she and Garcia were concerned that D.P. might be staying
out late with boys and had a conversation with D.P. about good and bad
touching.  During the conversation, D.P.
told them that someone had been touching her in a way that they shouldn't.  When they asked who was touching her, D.P. identified
her grandfather.[5]  After their conversation, Welch immediately
called the police.  The police arrived
and spoke first to Welch and then to D.P. 
The officers next took D.P. to the hospital where she was examined by Sheppard.

            Welch also testified that she and her children lived with
her father in 2007 and 2008 while she was having financial difficulties.  When she worked nights, her father stayed
with the children.  She later moved out
to live with her grandmother in 2008. 
She also testified that, on February 2, 2009, D.P. went with her father
to Walmart.  

            Officer Brad Skaggs testified that on February, 7, 2009, he
responded to a complaint regarding an aggravated sexual assault at Welch's
residence.  When he spoke to D.P., she was
twelve years old and it was difficult for her to talk about the incident.  She was upset and withdrawn.  During the State's direct examination, Skaggs
testified that D.P. identified her grandfather as the person who sexually
abused her.[6] 

            Martha Perez (Perez), Appellant's daughter, testified
that she had lived with her father until she was ten years old.  She testified that, when she was inside her bedroom
asleep, Appellant would come in and touch her body on her breast and vagina.[7]  She also testified that he would drive her
out to the country and touch her breast and vagina there also.  Although she reported the incidents to the
police when she was fourteen years old, she did not hear back from them.  The State then rested.  Appellant called one witness -- D.P. and then
rested.

            Following closing arguments, the jury convicted Appellant
on all four counts in the indictment and assessed his sentence.  Thereafter, the trial court issued four
judgments, one for each count in the indictment.  In its judgment on Count I of the indictment,
the trial court ordered Appellant pay $8,655.00 in court costs, including
$4,615.00 in court-appointed attorney's fees, $1,590.00 in court-appointed
investigator fees, and $2,010.00 in court-appointed interpreter fees.  This appeal followed.

Discussion

            Appellant asserts that the trial
court erred by permitting the State to introduce the testimony of Appellant's
daughter, Martha Perez, regarding a sexual assault by Appellant that occurred
years earlier.  He next asserts that the
probative value of Perez's testimony was exceeded by its prejudicial
effect.  Lastly, Appellant contends that
the trial court erred by admitting hearsay testimony by Welch and Officer
Skaggs that D.P. had identified Appellant as the person who sexually abused
her.   

            In
response, the State contends that Perez's testimony was admissible because
Appellant had asserted the defense of fabrication and Appellant did not object
to Perez's testimony at trial on the basis of the probative value of the
testimony being outweighed by its prejudicial effect.  As to the alleged error in admitting hearsay
testimony, although the State admits that the hearsay exception it argued at
trial was invalid, it asserts that Welch's hearsay testimony was admissible as
part of D.P.'s outcry.  

Standard of Review

            Because the trial courts are in the
best position to decide substantive admissibility questions, we review a trial
court=s ruling on admissibility under an
abuse of discretion standard.  Powell
v. State, 63 S.W.3d 435, 438 (Tex.Crim.App. 2001). Under this
standard, an appellate court should not reverse a trial court whose ruling was
within the zone of reasonable disagreement. 
State v. Mechler, 153 S.W.3d 435 (Tex.Crim.App. 2005).  

            Further,
error in the admission of evidence is non-constitutional error and is therefore
subject to a harm analysis under Rule 44.2(b) of the Texas Rules of Appellate
Procedure.  Potier v. State, 68 S.W.3d 657, 666 (Tex.Crim.App. 2002); Johnson v. State, 967 S.W.2d 410, 417
(Tex.Crim.App. 1998).  To obtain a
reversal of a conviction based on error in the admission of evidence, an
appellant must establish that the trial court's ruling was outside the zone of
reasonable disagreement and that the error affected his or her substantial
rights.[8]  Tex. R. App. 44.2(b); Potier, 68 S.W.3d at 666.  In
considering harm, we view the entire record to determine whether the error had
more than a slight influence on the verdict. 
Potter v. State, 74 S.W.3d
105, 113 (Tex.App.--Waco 2002, no pet.). 


Issue One -- Rule 404(b)

            Rule
404(b) provides that evidence of other crimes, wrongs, or acts is not
admissible "to prove the character of a person in order to show action in
conformity therewith"; however, it may be admissible for other purposes,
such as proof of motive, opportunity, intent, preparation, plan, knowledge, or
identity.  Tex. R. Evid. 404(b).  "This list is illustrative, not
exhaustive."  Berry v. State, 233 S.W.3d 847, 858 (Tex. Crim.App. 2007).

            Rebuttal
of a defensive theory is also one of the permissible purposes for which
evidence may be admitted under Rule 404(b). 
Williams v. State, 301 S.W.3d
675, 687 (Tex.Crim.App. 2009), cert.
denied, ___ U.S. ___, 130 S.Ct. 3411, 177 L.Ed.2d 326 (2010).  Thus, whether Perez's testimony that Appellant
had sexually assaulted her was admissible turns on "whether the
extraneous-offense evidence has noncharacter-conformity relevance by, for
example, rebutting a defensive theory or making less probable defensive
evidence that undermines an elemental fact."  Bass v.
State, 270 S.W.3d 557, 563 n.8 (Tex.Crim.App. 2008).  Specifically, such evidence may be admissible
when it is introduced to rebut the defensive theories of fabrication and retaliation.  Id.          

            Appellant
asserts Perez's testimony was unnecessary because he did not assert the defense
of fabrication but merely sought to establish that D.P.'s statements were
inconsistent.  During trial, however, Appellant
attempted to establish that D.P. fabricated her allegations because she was mad
at Appellant or to avoid being punished for having stayed out past her curfew.  As a result, Appellant did more than merely
impeach D.P.'s credibility.  Through the
responses elicited from D.P., as well as other witnesses, Appellant opened the
door to extraneous-offense evidence to rebut the defensive theories of
fabrication and retaliation.             

            Having
reviewed the entire record, whether or not Perez's testimony is admissible for
the noncharacter-conformity purpose of rebutting Appellant's defensive theories
of fabrication and retaliation is at least within the zone of reasonable
disagreement.  See Dennis v. State, 178 S.W.3d 172, 177-78 (Tex.App.--Houston [1st
Dist.] 2005, pet. ref'd).  Appellant's
first issue is overruled.

Issue Two -- Unfairly Prejudicial

            Once a trial court rules that
uncharged misconduct evidence is not barred under Rule 404(b), the opponent of
the evidence may nevertheless object under Rule 403.[9]  Casey
v. State, 215 S.W.3d 870, 879 (Tex.Crim.App. 2007).  To preserve a complaint for our review,
Appellant must have presented to the trial court a timely request, objection,
or motion that stated a specific Rule 403 objection.  Tex. R. App. P. 33.1(a).  See
Wenger v. State, 292 S.W.3d 191, 202 (Tex.App.--Fort Worth 2009, no pet.)
(citing Mosley v. State, 983 S.W.2d
249, 265 (Tex.Crim.App. 1998) (op. on reh'g)). 
At trial, Appellant objected to the admissibility of Perez's testimony
stating only that he did not open the door to her testimony.  He made no objection based on Rule 403, and
he did not assert that the testimony was unduly prejudicial.[10]  Therefore, Appellant preserved nothing for
our review.  Id.  Appellant's second issue
is overruled.

Issue Three -- Hearsay Testimony

            At trial, Appellant objected to
testimony by Welch and Officer Skaggs, regarding statements by D.P. that
Appellant had sexually abused her, as being hearsay.  In both instances, the State asserted the
testimony was not hearsay but statements of identification[11]
and the trial court overruled Appellant's objections.  In its brief, the State concedes that Rule
801(e)(1)(C) is not a legitimate basis upon which the trial court could admit those
statements; however, it asserts that Welch's testimony is nevertheless
admissible under article 38.72 of the Code of Criminal Procedure as an outcry
by a victim of child abuse.[12]


            Although
the trial court's basis for admitting Welch's testimony may have been
erroneous, we must sustain the trial court's ruling if it can be sustained on
any theory of law applicable to this case. 
Romero v. State, 800 S.W.2d
539, 543 (Tex.Crim.App. 1990); Blackwell
v. State, 193 S.W.3d 1, 9 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd).[13]  Here, Welch's testimony was admissible as an
outcry statement because the evidence reflects she was the first person to whom
D.P. described sexual abuse by her grandfather.[14]  

            Assuming
without deciding that the trial court's ruling as to Officer Skaggs's testimony
was erroneous, we must determine whether his testimony affected Appellant's
substantial rights.  See Couchman v. State, 3 S.W.3d 155, 160 (Tex.App.--Fort Worth
1999, pet. ref'd).  Here, Sheppard and
Welch had previously testified to the same matter as Officer Skaggs, i.e., D.P.
told them that Appellant was the person who sexually abused her.  D.P. also identified Appellant as the person
who sexually assaulted her.  Therefore, Officer
Skaggs's statement is merely cumulative of properly admitted testimony on the
same issue.  

            Moreover,
after Officer Skaggs testified to D.P.'s hearsay statement, D.P. testified in
Appellant's case-in-chief where she was under oath and subject to
cross-examination.  Furthermore, the jury
had the opportunity to observe her demeanor and to judge her credibility.  Thus, even if the trial court erred in
allowing Officer Skaggs to testify about D.P.'s out-of-court statement, we must
disregard the error because it could not have affected Appellant's substantial
rights.  See Matz v. State, 21 S.W.3d 911, 912 (Tex.App.--Fort Worth 2000,
pet. ref'd) (no reversible error where videotape essentially repeated the
victim's testimony); Couchman, 3
S.W.3d at 161 (no reversible error where subsequent hearsay statement had
already been admitted on the same issue by a prior witness); Thompson v. State, 665 S.W.2d 188, 190
(Tex.App.--Houston [1st Dist.] 1984, pet. ref'd) (no reversible error where
complainant who made out-of-court statement was in court, testified on direct
and cross-examination, and was available for future examination). See also Tex. R. App. P. 44.2(b).  Appellant's third issue is overruled.

Court-Appointed Attorney’s Fees and Investigative Expenses

            We also note an issue not raised by
Appellant regarding the assessment of attorney's fees, investigative expenses,
and interpreter fees.[15]  The written judgment as to Count I reflects
the assessment of court-appointed attorney's fees and investigative expenses
totaling $6,205.00 as court costs.  In
order to assess attorney's fees, including investigative expenses, as costs of
court, a trial court must determine that the defendant has financial resources
that enable him to offset in part or in whole the costs of legal services
provided.[16]  Here, the clerk's record reflects that the
trial court found Appellant indigent and unable to afford the cost of legal
representation both before trial in March 2010, and again after trial.[17]  Unless a material change in his financial
resources occurs, once a criminal defendant has been found to be indigent, he
or she is presumed to remain indigent for the remainder of the proceedings.  Tex. Code Crim. Proc. Ann. art. 26.04(p)
(West Supp. 2010).  Therefore, because
there is evidence of record demonstrating that immediately following the
rendition of judgment Appellant was indigent and qualified for court-appointed
counsel, we presume that his financial status has not changed and that he is
indigent.  Perez v. State, 323 S.W.3d 298, 307 (Tex.App.--Amarillo 2010, pet.
ref'd).

 
          Furthermore, prior to
requiring a defendant to offset any of the costs of his legal services and
expenses, the record must reflect some factual basis to support the determination
that the defendant is capable of paying attorney’s fees.  Id.; Barrera
v. State, 291 S.W.3d 515, 518 (Tex.App.--Amarillo 2009, no pet.); Perez v. State, 280 S.W.3d 886, 887
(Tex.App.--Amarillo 2009, no pet.).

            We
note that the record in this case does not contain a pronouncement,
determination, or finding that Appellant had financial resources that enable
him to pay all or any part of the fees or expenses paid his court-appointed
counsel, and we are unable to find any evidence to support such a determination.  Therefore, we conclude that the order to pay
attorney’s fees and investigator expenses as court costs and notice of
withdrawal of money from Appellant's inmate account were improper.  See
Mayer v. State, 309 S.W.3d 552, 555-56 (Tex.Crim.App. 2010).  No trial objection is required to challenge
the sufficiency of the evidence regarding the defendant's ability to pay.  Id.  

            When
the evidence does not support an order to pay court-appointed attorney's fees
and expenses, the proper remedy is to correct the order.  Id.
at 557; see Watkins v. State, 333
S.W.3d 771, 781-82 (Tex.App.--Waco 2010, pet. ref'd); Perez, 323 S.W.3d at 307. 
Accordingly, we conclude that the judgment as to Count I should not have
assessed the sum of $6,205.00 in court-appointed attorney's fees and
investigator expenses as costs of court.

Court-Appointed Interpreter Expenses

            The trial
court's judgment also assesses, as costs of court, the sum of $2,010.00 for the
services of a court-appointed interpreter. 
While an accused is entitled to the appointment of an interpreter if it
is determined that he or a witness does not understand the English language,
and while the interpreter is entitled to be compensated for his or her
services, nothing in article 38.30 of the Texas Code of Criminal Procedure
authorizes a trial court to assess the cost of that interpreter against the
accused.  Furthermore, the miscellaneous provisions
of Chapter 102 of the Texas Code of Criminal Procedure, pertaining to costs to
be paid by defendants, do not authorize the assessment of such expenses.  Finding no statutory authority for the
assessment, we conclude that the sum of $2,010.00 in court-appointed interpreter's fees should not
have been assessed as costs of court. 

Conclusion

            The
judgment as to Count I is corrected to reflect court costs of $450.00 and, as
corrected, that judgment is affirmed. 
The judgments as to Counts II, III, and IV are affirmed.  

                                                                                    Patrick
A. Pirtle

                                                                                          Justice

 

Do not publish.                                 











[1]See Tex. Penal Code Ann. § 22.021(a)(1)(B)(i)
(West 2011).





[2]See Tex. Penal Code Ann. § 21.11(a)
(West 2011). 





[3]The State subsequently sought to increase the
punishment range for the indicted offenses to that of a habitual felon by
giving notice of three prior felony convictions -- two prior felony convictions
for DWI offenses in 2002 and a felony conviction for unlawfully carrying a
weapon on licensed premises in 1982.





[4]Dr.
Ann Sims, a medical director for the Children's Advocacy Center, testified that
D.P.'s physical examination was consistent with her history.  Blake Goertz, DPS Crime Lab -- DNA Section
Supervisor, testified that DNA samples taken from D.P. during the SANE
examination did not show any foreign DNA.





[5]Appellant's
counsel objected to Welch's testimony as to what D.P. said on the basis of
hearsay.  The State asserted the
statement was not hearsay because it was a statement of identification and the
trial court overruled the objection.





[6]Appellant's
counsel lodged a hearsay objection to this testimony.  Again, the State asserted the statement was
not hearsay because it was a statement of identification and the trial court
overruled the objection.  

 





[7]Prior
to her testimony, the State alerted the trial court that she would be
testifying and the substance of her testimony. 
Appellant's counsel objected that he had not opened the door to such
testimony and the incidents were fifteen to sixteen years ago.  The trial court overruled the objection based
upon the State's arguments that the evidence was intended to rebut the defense
theory of fabrication.  





[8]"A substantial right is affected when the error
had a substantial and injurious effect or influence in determining the jury's
verdict."  Potter v. State, 74 S.W.3d 105, 113 (Tex.App.--Waco 2002, no pet.)
(quoting King v. State, 953 S.W.2d
266, 271 (Tex.Crim.App. 1997)).

 





[9]Rule
403 of the Texas Rules of Evidence provides that relevant evidence may be
excluded "if its probative value is substantially outweighed by the danger
of unfair prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of cumulative
evidence."  Tex. R. Evid. 403.





[10]To the extent Appellant asserts that Perez's testimony
was unduly prejudicial because the sexual assault occurred twenty-four years
earlier, we believe the decision as to whether or not the probative value of
that testimony was outweighed by its prejudicial effect was within the zone of
reasonable disagreement.  See Newton v. State, 301 S.W.3d 315, 318
(Tex.App.--Waco 2009, pet. ref'd) (sexual assault of stepdaughter by stepfather
that occurred twenty-five years before the offense charged not too remote in
time under Rule 404(b)).





[11]A
statement that is "one of identification of a person made after perceiving
the person" is not considered hearsay. 
Tex. R. Evid. 801(e)(1)(C).  





[12]Article 38.72 of the Code of Criminal Procedure
permits outcry statements by victims of child abuse to be admitted during
trial, despite the hearsay rule, if the statement was made by the child against
whom the offense was allegedly committed and the statement was made to the first
person to whom the child made the statement about the offense.  See Tex. Code Crim. Proc. Ann. art. 38.072 ' 1 (1), ' 2 (1)
& (2) (West 2005). 





[13]"Usually,
when evidence is admitted for the wrong reason, but it is admissible for
another reason, appellate courts do not find reversible error."  Deleon
v. State, 126 S.W.3d 210, 214 n.3 (Tex.App.--Houston [1st Dist.] 2003, pet.
ref'd).  





[14]To qualify as proper outcry statements, the child must
have described the alleged offense in some discernible way and must have more
than generally insinuated that sexual abuse occurred.  Garcia v. State, 792 S.W.2d 88, 91
(Tex.Crim.App. 1990).  See Sims v.
State, 12 S.W.3d 499, 500 (Tex.App.BDallas 1999, pet. ref=d); Hayden v. State, 928 S.W.2d 229, 231
(Tex.App.BHouston [14th Dist.] 1996, pet. ref=d). 

 





[15]Courts
of appeals may review unassigned error in criminal cases, particularly where
the record discloses error that should be addressed in the interest of
justice.  Hammock v. State, 211 S.W.3d 874, 878 (Tex.App.--Texarkana 2006, no
pet.).  Where, as here, the error appears
on the face of the judgment and does not involve the merits of the criminal
trial, but instead solely addresses the clerical correctness of the judgment,
we find that the interest of justice allows that we address the issue.





[16]Article
26.05 of the Texas Code of Criminal Procedure provides that "counsel in a
noncapital case . . . appointed to represent a defendant under this code shall
be reimbursed for reasonable and necessary expenses, including expenses for
investigation and mental health and other experts."  Tex. Code Crim. Proc. Ann. art. 26.05(d)
(West Supp. 2010).  Article 26.05 further
states, in pertinent part, as follows:

If the court
determines that a defendant has financial resources that enable him to offset
in part or in whole the costs of legal services, including any expenses and
costs, the court shall order the defendant to pay during the pendency of the
charges or, if convicted, as court costs the amount that it finds defendant is
able to pay.

Tex.
Code Crim. Proc. Ann. art. 26.05(g) (West Supp. 2010).





[17]Appellant
has been represented by court-appointed counsel throughout the proceedings
below and on appeal.  In addition, when
the trial court approved an authorization to expend additional funds for an
investigator and also appointed counsel for appeal in March 2010, the trial
court found Appellant indigent.  Further,
in each notice of withdrawal of money from Appellant's inmate account incorporated
into each of the four judgments for each count of the indictment for which Appellant
was convicted; see Randolph v. State,
323 S.W.3d 585, 587 (Tex.App.--Waco 2010, no pet.), the trial court found
"that Defendant is unable to pay the costs [$8,655.00] and that the funds
should be withdrawn from the inmate account."