02-10-069-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO.  02-10-00069-CR

 

 


 
 
 Tracy Lynn Escobedo
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 235th
District Court OF Cooke COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I. 
Introduction

          Appellant
Tracy Lynn Escobedo appeals his conviction for aggravated injury to a child
with a deadly weapon.  See Tex. Penal Code Ann. § 22.04(a), (e) (West 2011). 
Appellant pleaded not guilty.  The jury found him guilty and assessed his
punishment at life imprisonment with a $10,000 fine, and the trial court
sentenced Appellant accordingly.  In two issues, Appellant contends that the
trial court improperly denied his challenges for cause and that the trial court
erred by admitting evidence of extraneous acts or offenses.  We affirm.

II. 
Background[2]

          On
January 19, 2009, Appellant had an argument with Cynthia Stout at her home. 
Stout lived at the home with her children and husband, and Appellant had been
staying at the Stout residence “on and off” for three or four months.[3] 
After the argument, Appellant gathered some clothes, a bottle of Rooto, and a
bottle of crystal Drano and put them into a garbage bag.  Appellant took the
garbage bag and began walking toward Gainesville.[4] 
Stout, with four of her children inside the truck, followed Appellant and
offered him a ride, and she drove the truck, with the windows down, slowly
along the road as she asked Appellant to get in the truck. According to
Appellant, he decided to get in the truck when he realized Stout was not going
to leave.  Appellant testified that he tossed the garbage bag—containing the
clothes, Rooto, and crystal Drano—toward the bed of the truck because he did
not want Stout to know that he had the Rooto and crystal Drano and because he
did not want them inside the truck with the children.  However, the garbage bag
went inside the cab of the truck instead of the bed, and sulfuric acid from the
bottles inside the garbage bag severely burned each of the four children. 
Stout drove the children and Appellant to Gainesville, and paramedics arrived
to treat the children.  Appellant testified that while the paramedics treated
the three oldest children (the youngest child was the least severely injured), he
left the area with the youngest child in Stout’s truck because Stout told him
to, returned to the Stout residence, left the youngest child at the residence
with Stout’s eleven-year-old daughter (who was not in the truck and had
remained at the residence), and asked the neighbors for a ride back to
Gainesville.  Appellant testified that he wanted to go back to Gainesville to
borrow a friend’s car and drive to the hospital.  

All
four children were taken by helicopter to Parkland Hospital for additional
treatment.  The oldest child—the one for which Appellant was charged with
injuring in this case—was hospitalized for two months and has permanent
scarring.

III. 
Challenges for Cause

          Appellant
contends in his first issue that the trial court erred by denying his
challenges for cause to six venire members because those venire members could
not differentiate between the clear and convincing and beyond a reasonable
doubt standards of proof and might have convicted him on the lesser burden. 
The State responds that Appellant failed to preserve his first issue for
appellate review because he did not exercise peremptory strikes on the six
venire members he challenges on appeal. 

          To
preserve error regarding a trial court’s denial of a challenge for cause, a
defendant must: (1) exercise a peremptory challenge on a venire member whom the
trial court should have excused for cause; (2) exhaust all of his peremptory
challenges; (3) request and be denied an additional peremptory challenge; (4)
identify the objectionable venire member who actually sat on the jury whom he
would have struck otherwise; and (5) make the trial court aware of his
complaint at a time and in a manner in which it could be corrected.  Loredo
v. State, 159 S.W.3d 920, 923 (Tex. Crim. App. 2004); see Davis v. State,
329 S.W.3d 798, 807 (Tex. Crim. App. 2010); Johnson v. State, 43 S.W.3d
1, 5–6 (Tex. Crim. App. 2001); see also Tex. R. App. P. 33.1.  Further,
an appellant challenging denials of challenges for cause is entitled to
appellate review of denials only with respect to jurors he used statutory
peremptory strikes to exclude.  Busby v. State, 253 S.W.3d 661, 671
(Tex. Crim. App.), cert. denied, 129 S. Ct. 625 (2008).  If the issue
has been preserved, the appropriate standard of review for the denial of a
challenge for cause is an abuse of discretion standard.  Curry v. State,
910 S.W.2d 490, 493 (Tex. Crim. App. 1995).

          Appellant
failed to preserve his complaint for our review.  He complains of the trial
court’s denial of his challenges for cause to venire members one, two, ten,
twelve, seventeen, and thirty-nine, but Appellant did not use any of his
peremptory strikes on those venire members.  Instead, Appellant used his
peremptory strikes on venire members six, eight, fifteen, sixteen,
twenty-three, twenty-eight, thirty-two, forty-two, forty-four, forty-eight, and
fifty-six.  Thus, Appellant could have but did not exercise his available
peremptory strikes on the venire members that he now contends should have been
dismissed for cause. See Busby, 253 S.W.3d at 670–71 (holding appellant
could only complain on appeal about three of seven objectionable jurors because
he did not use peremptory strikes for the other four).  Appellant therefore
failed to preserve his first issue for appellate review, and we overrule it.

IV. 
Admission of Extraneous Acts or Offenses

          Appellant
argues in his second issue that the trial court abused its discretion by
admitting evidence concerning his knowledge and use of methamphetamine during
his cross-examination by the State.  The State responds that Appellant did not
preserve his complaint for appeal and that the evidence was admissible to rebut
Appellant’s defensive theory that he did not know the sulfuric acid would cause
the harm that it did.

A. 
Standard of Review

          We
review a trial court’s decision to admit or to exclude evidence under an abuse
of discretion standard.  Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim.
App. 2000); Lagrone v. State, 942 S.W.2d 602, 613 (Tex. Crim. App.), cert.
denied, 522 U.S. 917 (1997).  A trial court does not abuse its discretion
as long as the decision to admit or to exclude the evidence is within the zone
of reasonable disagreement.  Montgomery v. State, 810 S.W.2d 372, 380
(Tex. Crim. App. 1990) (op. on reh’g); see Green v. State, 934 S.W.2d
92, 101–02 (Tex. Crim. App. 1996), cert. denied, 520 U.S. 1200 (1997). 
“We give great discretion to the trial court in matters of admissibility of
evidence if correct under any theory of law, even if the trial court’s
underlying reason was wrong.”  Wenger v. State, 292 S.W.3d 191, 202–03
(Tex. App.—Fort Worth 2009, no pet.) (citing Romero v. State, 800 S.W.2d
539, 543–45 (Tex. Crim. App. 1990)).

B. 
Applicable Law

          It
is improper to try a defendant for being a criminal generally.  Alba v.
State, 905 S.W.2d 581, 585 (Tex. Crim. App. 1995) (citing Nobles v.
State, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992), cert. denied, 516
U.S. 1077 (1996)).  In that regard, rules of evidence 608 and 609 limit the
ways by which a witness’s credibility may be impeached.  See Tex. R.
Evid. 608, 609.  Further, rule of evidence 404(b) states, “Evidence of other
crimes, wrongs or acts is not admissible to prove the character of a person in
order to show action in conformity therewith.”  Tex. R. Evid. 404(b).  However,
rule 404(b) also provides that extraneous offense evidence may “be admissible
for other purposes, such as proof of motive, opportunity, intent, preparation,
plan, knowledge, identity, or absence of mistake or accident.”  Id.  This
list is illustrative, rather than exhaustive.  Johnston v. State, 145
S.W.3d 215, 219 (Tex. Crim. App. 2004).  And “[r]ebuttal of a defensive theory
such as mistake or accident is also one of the permissible purposes for which
relevant evidence may be admitted under Rule 404(b).”  Moses v. State,
105 S.W.3d 622, 626 (Tex. Crim. App. 2003); see Williams v. State,
301 S.W.3d 675, 687 (Tex. Crim. App. 2009), cert. denied, 130 S. Ct.
3411 (2010).

C.  Discussion

          Appellant
testified on direct-examination that he intended to toss his bag into the back
of the truck rather than the cab, that he had “no clue that [the sulfuric acid]
would do damage like it did,” that he would not intentionally hurt the
children, and that he took the youngest child to the Stout residence because
Stout told him to do so.  At a hearing outside the jury’s presence and before
the State’s cross-examination of Appellant, the State sought a ruling that it
could question Appellant about his drug use, arguing that Appellant had opened
the door to the admission of evidence concerning his drug use by testifying
about why he fled and suggesting that Appellant actually fled to hide the drug
paraphernalia at the house.  Appellant argued that the State’s theory was
“quite a stretch” and would not “get around Rule 608 and 609 about extraneous
acts and offenses.”  The trial court suggested, however, that Appellant’s prior
use of the sulfuric acid would be admissible concerning his knowledge of its
dangerousness, and it overruled Appellant’s objection. 

Before
any further testimony and after additional argument outside the jury’s presence
in which Appellant raised relevance and rule 403 objections,[5]
the trial court confirmed with Appellant that he intended to seek an
instruction on lesser-included charges of criminal negligence or recklessness
and asked whether Appellant’s prior use of sulfuric acid “would impact whether
or not he was criminally negligent or reckless.”  Appellant’s counsel
responded, “If [the State] could limit this to his knowledge, specific
knowledge about just the drain cleaner, I agree.  I think that would have an
effect.  But [the State is] going to bring up all kinds of other stuff.”  After
hearing further argument from the State, the trial court stated that it did not
know what the State would offer until it was offered and that it would rule on
Appellant’s objections as they were made to the State’s questions.

The
State then began its cross-examination of Appellant, and Appellant testified without
objection that he knew that methamphetamine is manufactured by combining sulfuric
acid with other ingredients, that sulfuric acid was dangerous but “not to the
extent to the damage that it did,” that pseudoephedrine is used to manufacture
methamphetamine, and that he had manufactured methamphetamine at the Stout
residence about a week before the incident. Appellant, also without objection,
identified three additional ingredients used to manufacture methamphetamine[6]
and testified that he kept his “meth making equipment” in a ditch near the
Stout residence “across the fence where the kids couldn’t get to it.”

Appellant
then requested a bench conference and objected to “any of this evidence” and
“everything [the State is] doing from now on” because it was extraneous and
prejudicial.  Appellant argued that the State had already established that he
was manufacturing methamphetamine and the ingredients used to manufacture it. 
The trial court overruled the objection, stating that part of Appellant’s
testimony was that he would “never do anything to hurt the kids” and that the
State was offering pictures of drug paraphernalia at the residence. During
further cross-examination, Appellant described in detail the process that he
used to manufacture methamphetamine, and he testified that he stored the
materials in a wooded area more than 100 feet from the residence in an area
where the children did not play.  Appellant acknowledged, however, that he does
not know where the children are at all times and that they explore the
neighborhood when they play.

Appellant
then, without objection, described two more ingredients used to manufacture
methamphetamine, acknowledged that “meth cooks” sometimes steal some of the
ingredients from others who possess it legally, and identified from a
photograph a hose that could be used to steal the ingredient.[7] 
Also without objection, Appellant identified the person from whom he obtained
the hose and testified that he last used methamphetamine about a week before
the incident and that he used methamphetamine approximately forty out of
fifty-two weekends in a year.  When the prosecutor asked why he did not “just
stop” using methamphetamine, Appellant objected, and the trial court overruled
the objection but instructed the prosecutor to limit her questioning to
identification of the drug paraphernalia recovered from the Stout residence
after the incident.  After the court’s ruling, the trial court admitted without
further objection three photographs of a box and its contents, which Appellant
identified as his “meth lab equipment.” Appellant also testified without
objection that sulfuric acid forms a gas when it contacts other substances when
making methamphetamine and that he did not sell methamphetamine at the Stout
residence. 

Appellant
rested after his cross-examination by the State, and the State called Cooke
County Sheriff’s Deputies Mitchell Nelson and Drue Pickle as rebuttal
witnesses.  Deputy Nelson identified several photographs he took at the Stout
residence the day of the incident.  Appellant objected to one of the
photographs, but the other photographs depicted ingredients used to manufacture
methamphetamine.  Deputy Pickle testified that he assisted in a search of the
Stout residence on the day of the incident, and he identified several
photographs taken during the search.  Two of the photographs taken in the
residence, which were admitted without objection from Appellant, depicted drug
paraphernalia commonly used to smoke narcotics. 

In
his brief, Appellant argues that extraneous acts and offenses are inadmissible
under rules of evidence 608 and 609 and acknowledges that if a “defendant opens
the door to such, the Court may allow the State to exploit that opening.” 
Appellant contends, however, that the State “is limited to going into only
those things germane to the matter offered by the defendant and only if its
probative value outweighs its prejudicial effects.”  The remainder of
Appellant’s argument is devoted to an explanation of how the evidence of his
drug use and manufacture of methamphetamine exceeded the permissible scope of
what the State should have been allowed to explore.  Appellant does not,
however, address whether the evidence concerning his use and manufacture of
methamphetamine may have been admissible for other purposes such as to rebut
his defensive theories of mistake, lack of intent to harm the children, and
lack of knowledge concerning the dangerousness of sulfuric acid.

Relevant
evidence may be admitted pursuant to rule 404(b) when it rebuts defensive
theories such as accident or mistake.  See Williams, 301 S.W.3d at 687; Moses,
105 S.W.3d at 626; see also Tex. R. Evid. 404(b).  Much of the testimony
discussed above was relevant to Appellant’s defensive theories because it
revealed Appellant’s knowledge of sulfuric acid and its volatility and because
it showed that Appellant manufactured methamphetamine at the Stout residence
where the children could access the manufacturing equipment.  See Tex.
R. Evid. 404(b) (providing that extraneous offense evidence may be admissible to
show intent, knowledge, or absence of mistake or accident); see also Williams,
301 S.W.3d at 687; Moses, 105 S.W.3d at 626.  We therefore hold that the
trial court did not abuse its discretion by admitting evidence concerning
Appellant’s use and manufacture of methamphetamine at the Stout residence. 
Moreover, Appellant does not differentiate what evidence arguably exceeded the
trial court’s initial ruling and seems to argue that none of the evidence
concerning his use or manufacture of methamphetamine was admissible.  But to
the extent that Appellant contends that only some of the evidence concerning
his use and manufacture of methamphetamine should have been admitted by the
trial court, we hold that Appellant failed to preserve that complaint for
appellate review by failing to object each time the evidence was offered or
seeking a running objection.  See Leday v. State, 983 S.W.2d 713, 717
(Tex. Crim. App. 1998) (“[O]verruling an objection to evidence will not result
in reversal when other such evidence was received without objection, either
before or after the complained-of ruling.”); Miramontes v. State, 225
S.W.3d 132, 144 (Tex. App.—El Paso 2005, no pet.) (holding complaint not
preserved despite numerous objections to extraneous offense evidence because
other evidence of same events admitted without objection).  We therefore
overrule Appellant’s second issue.

V. 
Conclusion

          Having
overruled each of Appellant’s two issues, we affirm the trial court’s judgment.

 

 

ANNE GARDNER
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and GARDNER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED: August 31, 2011 









[1]See Tex. R. App. P. 47.4.





[2]Because Appellant does not
challenge the sufficiency of the evidence, we only briefly set forth the
evidence presented at trial.





[3]Appellant is the father of
Stout’s youngest child. 





[4]The Stout residence is in
a rural part of Cooke County.





[5]Appellant does not urge
relevance or rule 403 arguments on appeal. 





[6]Appellant successfully
objected to the admission of photographs of the other ingredients, but he did not
object to the questions asking him to identify the ingredients and confirm
their use in the manufacturing process. 





[7]Appellant unsuccessfully
objected to the photograph of the hose, but he did not object to the question about
the use of the hose.