

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00493-CR

Adam **AGUIRRE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 371st Judicial District Court, Tarrant County, Texas
Trial Court No. 1259423D
The Honorable Phillip Vick, Judge Presiding

Opinion by:     Rebeca C. Martinez, Justice

Sitting:          Karen Angelini, Justice
                   Marialyn Barnard, Justice
                   Rebeca C. Martinez, Justice

Delivered and Filed:   March 5, 2014

AFFIRMED

Adam Aguirre appeals his conviction for aggravated kidnapping, asserting that an accomplice witness's testimony was not corroborated, the evidence is insufficient to support his conviction as a party to the offense, and the court made errors in the jury charge and in admitting certain evidence. We overrule Aguirre's issues, and affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In the early evening of October 16, 2011, Jessica Dunnavant was abducted by Eric Aguirre, the father of her eleven-day-old infant, when he forced her into a van driven by appellant Adam

Aguirre, Eric's brother. While Aguirre drove the van around the city for several hours, Eric pinned Jessica down on the floor of the van and repeatedly assaulted her during the night by choking her and punching her in the head, face, arms, and stomach. When Jessica asked Aguirre to help her, he said, "No," and told her it was "what [you] get for calling the cops." Jessica testified that she had previously called the police about Eric beating her during their relationship. At one point during the night, Aguirre stopped to pick up Sarah Lopez, an ex-girlfriend of Eric's with whom Aguirre was sexually involved, and she rode in the passenger seat of the van while Eric stayed in the back with Jessica. Aguirre drove the van from location to location, stopping periodically so he, Lopez, and Eric could use methamphetamine, always leaving Jessica in the van with one of them to guard her. Eric also gave Aguirre and Lopez drugs to sell to try to get money for a motel room. While she was in the van, Jessica overheard Aguirre and Eric talk about killing her.

Sometime between 2:00 a.m. and 3:00 a.m., Aguirre drove to his mother's house and picked up his uncle, Mariano Pena, Jr., who was the owner of the van. They put a removable car seat and blanket in the van, and left again with Pena driving, Aguirre sitting in the passenger seat, Eric and Lopez in the next row of seats, and Jessica in the far back of the van. Pena drove the van to Carter Park, a large wooded public park. Eric and Jessica got out, while Lopez, Aguirre, and Pena drove away in the van. Eric took Jessica down a steep embankment to a thickly-wooded creek bed where he allowed her to lay down on the car seat and sleep for a while. The next morning, Eric instructed Jessica to wipe her face with a rag and put on a hooded jacket he had brought. Jessica and Eric then walked along the creek for hours; at one point they walked up out of the creek bed into the park to get water; Eric insisted Jessica wear a hooded jacket and keep a towel draped over her head to conceal her injuries. Around noon, a woman and her children approached the creek. In the rush to conceal himself, Eric walked in front of Jessica and she got close to the road and ran out toward an approaching car. The driver stopped, opened the door for

Jessica to get in, and sped away as Eric ran toward them. The driver called police as Eric chased after the car.

Aguirre was charged with aggravated kidnapping. At trial, in addition to testimony by the investigating officers, Jessica and Lopez testified about the events. The jury found Aguirre guilty, and he was sentenced to twenty-two years' imprisonment. Aguirre now appeals.

## ANALYSIS

On appeal, Aguirre raises several issues, arguing that (1) there is insufficient evidence to corroborate Lopez's accomplice testimony, (2) the evidence is insufficient to support his liability as a party to the offense, (3) the court's charge incorrectly instructed the jury to determine whether Lopez was an accomplice as a matter of fact, (4) the court's charge during the punishment phase should have included a jury issue on whether the victim was released in a safe place, (5) the court erred in admitting evidence that he used drugs and discussed killing Jessica during the kidnapping because the State failed to give notice of such "extraneous offense evidence," and (6) the court erred in permitting a police officer to testify that Jessica told him Aguirre used drugs and talked about killing her during the kidnapping.

### *Accomplice Witness – Corroboration*

Under the "accomplice-witness rule," a conviction cannot be upheld on the basis of accomplice testimony unless it is corroborated by "other evidence tending to connect the defendant with the offense committed." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005) (noting the corroboration is not sufficient if it merely shows commission of the offense); *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011). An accomplice is a person who participated with the defendant before, during, or after the commission of the crime and acted with the required culpable mental state. *Id.*; *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004). The corroborating evidence need not be sufficient by itself to establish guilt, and need not directly link

the defendant to commission of the offense. *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008); *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999).

In reviewing the sufficiency of the corroborating evidence in the record, we exclude the accomplice testimony from our consideration and focus on the remainder of the record to determine whether there is any independent evidence that tends to connect the defendant with the commission of the crime. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). We view the independent evidence in the light most favorable to the jury's verdict. *Brown*, 270 S.W.3d at 567. The corroborating evidence may be direct or circumstantial, and is sufficient if the combined weight of the non-accomplice evidence tends to connect the defendant to the offense. *Solomon*, 49 S.W.3d at 361; *Gosch v. State*, 829 S.W.2d 775, 777 (Tex. Crim. App. 1991). While a defendant's mere presence at the scene of the crime is, by itself, insufficient corroboration, the defendant's presence combined with other suspicious circumstances may be sufficient to tend to connect the defendant to the crime. *Cox v. State*, 830 S.W.2d 609, 611 (Tex. Crim. App. 1992); *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996). Likewise, evidence that the defendant was in the presence of an accomplice at or near the time or place of the crime is proper corroborating evidence. *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997).

Here, the record contains more than sufficient non-accomplice evidence independently tending to connect Aguirre with the aggravated kidnapping. The evidence showed that Aguirre was not only present with two accomplices during commission of the crime, but admittedly was the driver of the van at the time Jessica was abducted and during the several hours she was held captive and physically assaulted by his brother. In his interview with Detective Merle Devin Green, Aguirre admitted that he knew Eric was assaulting Jessica as he drove the van around the city, and that he heard Jessica ask him for help. Aguirre told Jessica something to the effect of, "Don't ask me for help . . . [t]hat's why you shouldn't have called the cops." Aguirre expressed

his belief to Detective Green that Jessica was trying to get his brother thrown in jail. According to Green, Aguirre gave several inconsistent versions of the night's events.

Jessica testified that Aguirre drove up in the van just as Eric grabbed her, was present when Eric physically forced her into the back of the van, and was driving the van the entire time before they went to the park. Throughout the night, Eric repeatedly hit her in the face and body as Aguirre drove around. At one point, Eric choked her so severely that she blacked out and urinated on herself which created an odor inside the van. Both Jessica and Officer Finch, who interviewed her at the hospital, testified she suffered obvious injuries to her face; the photographs admitted into evidence confirm the severe facial injuries. Jessica stated that Aguirre made several stops and exited the van at times during the night; he returned to the driver's seat of the van each time. Eric supplied drugs to Aguirre and Lopez to use and sell, and Eric also used the drugs as well. As stated, when Jessica asked Aguirre for help, he refused and told her that she "shouldn't call the cops." Jessica stated that Aguirre acted like she deserved what was happening. Jessica also stated she heard Aguirre and Eric talking about killing her.

Mariano Pena, Jr. testified that Aguirre, his nephew, borrowed his van on the night of the offense. Pena stated that Aguirre, Eric, and Lopez came to the house about 1:00 a.m. Pena told Aguirre he could not use the van anymore and stated he (Pena) would drive Lopez home. Aguirre got a blanket from a back shed. Pena then drove them in the van to Carter Park. He did not realize Jessica was in the back of the van until she got out with a shirt over her head; he did not see any injuries. Eric took out something like a mattress from the van, and he and Jessica stayed at the park. Pena drove away with Aguirre and Lopez, eventually dropping off Lopez at her home. The police recovered the car seat, blanket, and rag in the park at the place where Jessica described. The blanket and rag, as well as the van carpet, tested positive for human blood.

Considering the combined weight of the non-accomplice evidence detailed above, we conclude it sufficiently tends to connect Aguirre to the commission of the aggravated kidnapping, and corroborates the accomplice testimony given by Lopez. *See* TEX. PENAL CODE ANN. § 20.04(a)(4), (5) (West 2011) (offense of aggravated kidnapping); *Solomon*, 49 S.W.3d at 361.

### *Sufficiency of the Evidence – Party Liability*

Aguirre also challenges the sufficiency of the evidence to establish his conviction for aggravated kidnapping. Aguirre argues that "the entire offense was committed by Eric," and that there is no evidence Aguirre knew what Eric was planning before he stopped the van and the abduction occurred. Aguirre asserts that the only evidence against him is that he did not help Jessica once she was abducted and he "drove around a lot."

In reviewing legal sufficiency, we consider all the evidence, both direct and circumstantial, in the light most favorable to the verdict to determine whether any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The essential elements of the crime are the elements of the offense as defined by a hypothetically correct jury charge, which is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The law "as authorized by the indictment" consists of the statutory elements of the offense as modified by the charging instrument. *Id.*; *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

In conducting a legal sufficiency review, we defer to the jury's assessment of the credibility of the witnesses and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899. The

jury may make reasonable inferences from the evidence presented. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (jury may draw reasonable inferences from the basic facts to the ultimate facts). We resolve any inconsistencies in the evidence in favor of the judgment. *Curry*, 30 S.W.3d at 406. This legal sufficiency standard applies equally to both direct and circumstantial evidence. *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000).

As applied to this case, the offense of aggravated kidnapping is committed when a person intentionally or knowingly abducts another person with the intent to inflict bodily injury on her or terrorize her. TEX. PENAL CODE ANN. § 20.04(a)(4), (5). "Abduct" means to restrain a person with intent to prevent her liberation by secreting or holding her in a place where she is not likely to be found or using or threatening to use deadly force. *Id.* § 20.01(2) (West 2011). To "restrain" means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person. *Id.* § 20.01(1) (West 2011). Finally, restraint is defined as being "without consent" if it is accompanied by force. *Id.*

The jury was instructed that it could convict Aguirre of aggravated kidnapping under the law of parties. A person may be convicted as a party if the offense is committed by the conduct of another for which he is criminally responsible. TEX. PENAL CODE ANN. § 7.01(a) (West 2011). A person is criminally responsible for the conduct of another if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . ." *Id.* § 7.02(a)(2) (West 2011). Mere presence of a person at the scene of a crime either before, during or after the offense, or even flight from the scene, without more, is insufficient to sustain a conviction as a party to the offense; however, combined with other incriminating evidence it may be sufficient to sustain a conviction. *Thompson v. State*, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985). In determining whether a defendant participated as

a party in the commission of an offense, the jury may consider events that occurred before, during or after the offense, and may rely on acts that show an understanding and common design. *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996) (opin. on reh'g); *Barnes v. State*, 56 S.W.3d 221, 238 (Tex. App.—Forth Worth 2001, pet. ref'd) (agreement to act together in a common design is seldom proven by direct evidence, but by circumstantial evidence). There must be sufficient evidence of an understanding and common design to commit the offense, but each fact need not point directly to the guilt of the defendant as long as the cumulative effect of the facts is sufficient to support the conviction under the law of parties. *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012); *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

Here, the evidence showed that Jessica was abducted within the meaning of section 20.04(a). She was "restrained" inside the van, with her movements restricted when she was physically forced into the van, confined inside and held on the floor through force and against her will. She was also moved from place to place during the night as Aguirre drove the van around. TEX. PENAL CODE ANN. § 20.01(1). Further, she was kept down on the floor of the van the entire time. The van had no back seats, only driver and passenger seats in the front, and its windows were situated so that she could not see outside and no one could see inside without walking up next to the van to look inside. Thus, the evidence shows that for several hours she was secreted or held in a place where she was not likely to be found. *Id.* § 20.01(2). Further, the intent to inflict bodily injury on her or terrorize her is supported by the evidence that she was physically assaulted throughout the night, resulting in serious bodily injury. *Id.* § 20.04(a)(4), (5).

Further, there is sufficient evidence to support the jury's finding that Aguirre's actions that night, particularly driving the van, were taken with the intent to promote or assist in the commission of Jessica's aggravated kidnapping, making him criminally responsible. *Id.* §§ 7.01(a), 7.02(a)(2). Aguirre was the person who borrowed the van from Pena; he drove up in

- 8 -

the van at exactly the same time that Eric was grabbing Jessica and bringing her across the street; and he exited the van several times during the night and returned to the driver's seat each time. In addition, Aguirre admitted he heard Jessica ask him to help her, and in refusing he told her that she "shouldn't have called the cops." The jury could reasonably infer, as Jessica testified she did, that Aguirre meant that she deserved what she was getting, i.e., a kidnapping and beating. Most damningly, Jessica heard Aguirre and Eric talking about killing her and "how they would do it." The accomplice testimony by Lopez corroborated this evidence, as she also stated she heard the discussion about killing Jessica. Lopez also testified that Aguirre asked for zip ties at one of their stops during the night. Aguirre's words and actions before and during the offense support a finding that he had an understanding and common design with his brother to assist him in committing the aggravated kidnapping against Jessica. *Gross*, 380 S.W.3d at 186; *Ransom*, 920 S.W.2d at 302. We conclude the evidence is sufficient to support Aguirre's conviction of aggravated kidnapping.

### *Jury Charge Error — Accomplice*

Aguirre argues the trial court erred in instructing the jury to determine whether Sarah Lopez was an accomplice as a matter of fact, rather than as a matter of law. The evidence dictates whether an accomplice as a matter of law or fact instruction is required. *Smith*, 332 S.W.3d at 439. A witness who is indicted for the same offense as the defendant, or a lesser-included offense, is an accomplice as a matter of law. *Id.* When the evidence clearly shows that a witness is an accomplice as a matter of law, the trial court must submit such instruction to the jury. *Id.* Here, the record showed that Lopez pled guilty to a lesser-included offense before she testified at Aguirre's trial; therefore, she was an accomplice as a matter of law and the court was required to so instruct the jury. *Id.*; *Casanova v. State*, 383 S.W.3d 530, 533 (Tex. Crim. App. 2012). Instead, the court incorrectly instructed the jury to determine whether Lopez was an accomplice as a matter of fact. *See Smith*, 332 S.W.3d at 439-40 (when there is conflicting evidence as to whether a

witness is an accomplice, then the trial court may instruct the jury to determine the witness's status as a question of fact).

Because Aguirre did not object to the incorrect jury instruction, however, he must establish that he suffered egregious harm in order to obtain a reversal based on the charge error. *Casanova*, 383 S.W.3d at 533 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). In determining whether the error caused egregious harm, we consider the entire record and assess whether the jury, had it been properly instructed, "would have found the corroborating evidence so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Id.* at 534. Whether error in failing to submit a proper accomplice-witness instruction is harmful is a function of the strength of the corroborating evidence, which itself is a function of the evidence's reliability and how compellingly it tends to connect the defendant to the offense. *Id.* at 539. Here, as we have detailed above, the non-accomplice evidence tending to connect Aguirre to commission of the offense is substantial. Indeed, Lopez's accomplice testimony did not add much value other than corroboration of facts testified to by Jessica. Based on our review of the entire record and the strength of the non-accomplice evidence connecting Aguirre to the aggravated kidnaping, we conclude the charge error did not cause egregious harm.

### *Jury Charge Error — Punishment Phase*

Aguirre asserts the trial court erred in denying his request during the punishment phase for a jury issue on whether he voluntarily released the victim in a safe place. Aggravated kidnapping is a first degree felony punishable by a term of imprisonment between five years to life. TEX. PENAL CODE ANN. § 20.04(c) (West 2011); *Id.* §12.32(a) (West 2011). Section 20.04(d) provides that if, during the punishment phase, the defendant raises the issue of whether he voluntarily released the victim in a safe place and proves it by a preponderance of the evidence, the offense is reduced to a second degree felony. *Id.* § 20.04(d) (West 2011); *Posey v. State*, 966 S.W.2d 57, 63

(Tex. Crim. App. 1998) (for defendant to be entitled to jury instruction on defensive issue of "release in a safe place" under section 20.04(d), defendant must prove the issue in the affirmative by preponderance of the evidence). The term "voluntarily" in section 20.04(d) is interpreted narrowly to mean the absence of "rescue by the police [or others] or escape by the [kidnap] victim." *Brown v. State*, 98 S.W.3d 180, 188 (Tex. Crim. App. 2003). There is no evidence that Aguirre voluntarily released Jessica within the meaning of section 20.04(d). To the contrary, the evidence shows that Jessica was left at the park with Eric, her captor, who continued to guard her through the night and next morning until Jessica was able to escape by running into the road in front of a car; even then, Eric chased after the car as it drove away with Jessica inside. Aguirre was not entitled to a jury issue on "release in a safe place" under section 20.04(d).

### *Lack of Notice and Admission of "Extraneous Offense" Evidence*

In his last two issues, Aguirre argues the trial court abused its discretion in admitting certain testimony by Officer Brandon Finch, who interviewed Jessica at the hospital, because it constituted "extraneous offense" evidence under Rule 404(b) and the State did not give advance notice of its intent to introduce the evidence. TEX. R. EVID. 404(b). We review a trial court's ruling admitting or excluding evidence for an abuse of discretion. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). The trial court has wide latitude in ruling on the admission of extraneous offense evidence. *Montgomery*, 810 S.W.2d at 390. We will uphold the trial court's ruling if it is reasonably supported by the record and correct under any theory of law applicable to the case. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

Over Aguirre's objection, Officer Finch testified Jessica told him that after she was forced into the van Aguirre drove to another location where Eric told her "they were going to do drugs and then kill her." Aguirre argues that the testimony should have been excluded because it

concerned his commission of extraneous offenses, and the State did not provide him with pre-trial notice of such evidence. TEX. R. EVID. 404(b). However, as the State points out, Officer Finch's testimony about drug use by Aguirre and Eric and their discussion of killing Jessica during the kidnapping is cumulative because the same evidence was admitted, without objection, through other witnesses' testimony, specifically Jessica and Sarah Lopez; therefore, any error in the admission of the evidence was cured. *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) (any error in admission of evidence is cured where the same evidence is admitted elsewhere during trial without objection); *Wenger v. State*, 292 S.W.3d 191, 202 (Tex. App.—Fort Worth 2009, no pet.) (erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the challenged ruling). In his brief, Aguirre also argues the evidence was inadmissible under Rule 403, but he did not raise this objection in the trial court and it is not preserved. TEX. R. APP. P. 33.1(a); TEX. R. EVID. 403; *Johnston v. State*, 145 S.W.3d 215, 220 (Tex. Crim. App. 2004) (defendant objecting to admission of extraneous offense evidence under Rule 404 must make further objection under Rule 403 in order for trial judge to weigh the probative and prejudicial value of the evidence).

Further, as to the lack of pre-trial notice, Aguirre does not argue he was surprised by the evidence or that his defense was handicapped by the lack of notice. Indeed, the record shows that Aguirre's counsel was well aware prior to Finch's testimony that he would testify concerning Aguirre's drug use and discussion of the victim's murder during the kidnapping. *See Hernandez v. State*, 176 S.W.3d 821, 825 (Tex. Crim. App. 2005) (purpose of Rule 404(b) notice requirement is to prevent surprise and enable defendant to prepare his defense in response to State's evidence). Therefore, even assuming the evidence was extraneous offense evidence subject to Rule 404(b)'s notice requirement, and not same transaction contextual evidence as argued by the State, Aguirre has failed to show that he was harmed by the lack of notice. *See id.* at 825-26; *see also Wyatt v.*

*State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000) (same transaction contextual evidence is admissible when "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction" and such evidence is necessary to the jury's understanding of the offense).

### CONCLUSION

Based on the foregoing reasons, we overrule all of Aguirre's issues on appeal and affirm the trial court's judgment.

Rebeca C. Martinez, Justice

DO NOT PUBLISH